864 F.2d 426
 51 Ed. Law Rep. 20
 Efren PAREDES, by his Next Friend, Mrs. Velia KOPPENHOEFER,
Plaintiff-Appellant,
v.
Ned CURTIS, in his official capacity as Supervisor of the
Lakeshore School District, and John L. Woods, in
his official capacity as Principal of
Lakeshore Junior High School,
Defendants-Appellees.
 No. 87-2116.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 19, 1988.
Decided Dec. 29, 1988.
 
 Philip R. Riley (argued), Berrien Springs, Mich., for plaintiff-appellant.
 Donald J. Bonato (argued), Thrun, Maatsch & Nordberg, Lansing, Mich., for defendants-appellees.
 James B. Morales, Alice Bussiere, Nat. Center for Youth Law, San Francisco, Ca., amici curiae on behalf of plaintiff-appellant.
 Before WELLFORD and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Appellant Efren Paredes appeals from summary judgment on a 42 U.S.C. Sec. 1983 claim relating to his short-term suspension from junior high school for possession of a drug look-alike substance. Paredes challenges his suspension on procedural due process grounds. Specifically, Paredes asserts that he had a due process right to confront and cross-examine an anonymous student informant at the school disciplinary hearings. In addition, he asserts that he had a due process right to the disclosure of a written statement of the student informant. Because we believe that the defendant school officials in this case gave Paredes more than adequate procedures, we AFFIRM.
 
 I. Factual Background
 
 2
 Efren Paredes, an eighth grade student at Lakeshore Junior High School in Stevensville, Michigan, was suspended for ten days for possession of a drug look-alike substance. On February 3, 1987, a student informant ("Doe") told Assistant Principal James Sanford that Paredes had offered to sell Doe cocaine on school grounds. Doe told Sanford that Paredes had some cocaine in his locker behind his books. Sanford stated that he opened the locker with a key and upon searching the locker found a plastic bag containing a powdery substance. Sanford advised appellee John Woods, principal of Lakeshore Junior High, of the situation. Sanford then returned to Paredes' locker twenty minutes later and found that the plastic bag was gone. Sanford talked to Doe again and ascertained that the sale was to take place at lunch for $25. Later that day, Doe informed Sanford that Paredes had the substance on his person and had offered to sell it to Doe. Doe had declined Paredes' offer. Sanford contacted appellee Ned Curtis, supervisor of the Lakeshore School District, to ascertain how to proceed further. On Curtis' directions, Sanford found Paredes and searched him. No powdery substance was found on Paredes' person. Paredes denied possessing any illegal drugs or ever having any powdery substance in his locker. Sanford contacted Paredes' mother and informed Paredes of a suspension hearing to be held the next day.
 
 
 3
 On February 4, 1987, Principal Woods formally charged Paredes with possession of a look-alike drug and conducted a suspension hearing. Present at the hearing were Paredes, his counsel, his mother, Woods, Sanford, and the school district's counsel. Sanford testified as to the events that occurred on the previous day and was cross-examined by Paredes' counsel. Paredes also testified on his own behalf. Despite objections by Paredes' counsel, Woods would not allow Doe to be cross-examined or divulge his name. A few days later, Woods decided to suspend Paredes.
 
 
 4
 Paredes appealed Woods' decision to Supervisor Curtis. Before the second hearing, Paredes arranged for and took a polygraph examination, the results of which indicated that Paredes was truthful in his denial and his version of these events. In addition, Doe had by then completed a written statement, which was not furnished to Paredes or his counsel and was unknown to Supervisor Curtis. The second formal hearing was held on February 11, 1987. Again, Sanford and Paredes testified. Similarly, Curtis did not permit Doe to be cross-examined and did not reveal his name. Paredes' counsel, however, was again allowed to question Sanford about the incident. At the conclusion of the hearing, Curtis decided to uphold Paredes' ten-day suspension. Paredes filed this Sec. 1983 action the day after the second hearing.
 
 II. Goss standard
 
 5
 Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), enunciates the standard of procedural due process for short-term school suspensions. As the Supreme Court stated:
 
 
 6
 Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.
 
 
 7
 419 U.S. at 581, 95 S.Ct. at 740. The Court made it clear that it was addressing only short-term suspensions:
 
 
 8
 We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures. Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required.
 
 
 9
 419 U.S. at 584, 95 S.Ct. at 741 (emphasis added). As a preliminary matter, we have to determine whether this case is the type of "unusual situation" alluded to in Goss that would call for more formal procedures. Paredes argues that school suspensions involving drug charges such as this case are so stigmatizing and harmful to a student's reputation that they should be considered an "unusual situation." Instead of Goss, Paredes would have this court apply the more general balancing test of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine the requirements of procedural due process.[1]
 
 
 10
 We do not agree that this case is the type of "unusual situation" referenced in Goss. In particular, we do not believe that an eighth grade student charged with possession of a drug look-alike substance and suspended for a relatively short period of ten days is forever faced with a tarnished reputation and restricted employment opportunities. Instead, we believe that this is precisely the type of situation the Goss standard was meant to address. Therefore, we decline the invitation to apply the Mathews balancing test and instead will apply the Goss standard in resolving both of Paredes' procedural due process contentions.
 
 III. Right to Cross-Examine
 
 11
 Paredes first asserts that he had the right to cross-examine the anonymous student informant. This contention requires us to consider the recent decision of this court in Newsome v. Batavia Local School Dist., 842 F.2d 920 (6th Cir.1988). In that case, Newsome was a high school student accused of possessing and offering a marijuana cigarette for sale on high school property. He was expelled after a suspension hearing and subsequent appeal to the school board. Similar to this case, Newsome challenged his expulsion on procedural due process grounds. In considering the various grounds, this court wrote:
 
 
 12
 After careful inquiry, we conclude that Newsome ... was not denied due process by not being permitted to cross-examine or to know the names of his student accusers [and] by not being permitted to cross-examine the school principal and superintendent....
 
 
 13
 842 F.2d at 924 (emphasis added).
 
 
 14
 Newsome was an expulsion case and therefore would require more formal procedures under the standard set forth in Goss. Yet as we held in Newsome, due process did not require that the accused have a right to cross-examine his student accusers or know their identities. 842 F.2d at 924-25. In this less serious suspension case the accused similarly does not have that right. Thus, we agree with the district court that Paredes did not have the right to cross-examine the student informant.[2]
 
 IV. Right to Disclosure of Written Statement
 
 15
 Paredes also asserts that he was not shown the written statement of student informant Doe and thus did not receive an explanation of the evidence against him as required by Goss. This second contention is similar to the ground on which we reversed the district court in Newsome. In Newsome, the superintendent during closed school board deliberations after the hearing revealed to the board a purported confession by Newsome to a local counselor. Newsome and his attorney had not been told of the alleged confession. This court held that nondisclosure to Newsome of the alleged confession evidence prior to or during the school board hearing violated due process. 842 F.2d at 927-28.
 
 
 16
 In our view, the written statement of student informant Doe is distinguishable from the confession evidence in Newsome. First, nothing in the record indicates that this written statement was used in the decision-making process. Assistant Principal Sanford received the written statement from Doe on February 5, 1987. Joint Appendix at 137. Thus, Principal Woods did not have Doe's statement when he conducted the suspension hearing on February 4, 1987. In addition, at the February 11 suspension hearing, Supervisor Curtis did not rely on Doe's statement nor did he know of its existence until the discovery stages of the litigation. Joint Appendix at 139. Moreover, we do not agree with Paredes that Doe's written statement is fundamentally different from the oral account of Doe's allegations as told through the testimony of Assistant Principal Sanford. Paredes' attorney had the opportunity to confront and cross-examine Sanford twice regarding Doe's allegations. In his brief and reply brief Paredes attempts to illustrate in great detail the discrepancies between Doe's written statement and Sanford's testimony. Yet in reviewing the record, we agree with the district court that the essential facts concerning Doe's allegations were laid in front of Paredes through the testimony of Sanford. In Newsome, the student had no opportunity to deny his alleged confession. Lastly, we believe that Newsome's lack of opportunity to deny his alleged confession of guilt to the counselor was infinitely more detrimental to his defense than was Paredes' lack of opportunity to show the relatively slight differences between Doe's verbal statement and his later written statement.
 
 
 17
 Because the school officials did not rely on the written statement in either the suspension or appeal hearings, because the discrepancies between the written statement of Doe and the oral allegations of Sanford are minor, and because in Newsome the student was not apprised of an alleged confession, we believe Newsome is distinguishable.
 
 V. Conclusion
 
 18
 In sum, we believe that the Goss standard for procedural due process was met here. At two formal school hearings, Paredes was given the opportunity to present his side of the story and throughout the process received an adequate explanation of the evidence against him. We believe he did not have additional rights to cross-examine the anonymous student informant or to have disclosure of the student informant's written statement. Accordingly, we AFFIRM the district court's decision granting summary judgment to defendants Curtis and Woods on the grounds that the procedural due process rights of Paredes were not violated.
 
 
 
 [1]
 In determining the requirements of due process, the Mathews Court stated:
 More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 424 U.S. at 334-35, 96 S.Ct. at 903.
 
 
 [2]
 It should be noted that Paredes' counsel was actually allowed to cross-examine Sanford, while Newsome's counsel in the more serious expulsion case was not allowed to cross-examine, a ruling that we upheld