Richard BIVENS, a Minor, By and Through his Next Friend and Mother, Susan GREEN, Plaintiff,

v.

ALBUQUERQUE PUBLIC SCHOOLS, et al., Defendants.

No. CIV 94–038 SC/LFG.

United States District Court, D. New Mexico.

Aug. 25, 1995.

Philip B. Davis, Albuquerque, NM, Melchior F.R. Savarese, III, Albuquerque, NM, Lisa M. Enfield, Albuquerque, NM, Kathleen F. Campion, Corrales, NM, for plaintiff Richard Bivens.

Eleanor K. Bratton, Max J. Madrid, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, for defendants Albuquerque Public Schools, Jack Bobroff, Superintendent, Albuquerque Public Schools, Martha Bass, Principal, Del Norte High School, Linda Lefton, Assistant Principal, Del Norte High School, Patricia Luna, Albuquerque Public Schools North Region Coordinator.

## MEMORANDUM OPINION AND ORDER

CAMPOS, Senior District Judge.

This case is before the Court on (1) Defendants' Motion to Dismiss, filed March 23, 1994, and (2) Plaintiff's Motion for Leave to Amend Complaint, filed July 14, 1995. The Court has considered matters outside the pleadings presented by the parties on both sides and thus has treated the motion to

dismiss as one for summary judgment.[1] For the reasons contained in this Opinion, the motion for summary judgment will be granted and the motion to amend will be denied.

In this civil rights action under 42 U.S.C. § 1983, Plaintiff Richard Bivens challenges his suspension from high school for violation of the school dress code against wearing sagging pants. At the time the complaint was filed, Plaintiff was a minor who appeared by and through his next friend and mother, Susan Green.[2]

During the first semester of the 1993–94 school term Plaintiff was enrolled as a ninth grader at Del Norte High School, a school operated and maintained by Albuquerque Public Schools (APS) in Albuquerque, New Mexico. During the first week of the fall semester, the assistant principal warned Plaintiff that his wearing of sagging pants violated the Del Norte student dress code, and that he would not be allowed to wear them to school. Plaintiff persisted in wearing his sagging pants to school, and was given numerous verbal warnings and subjected to a few short-term suspensions ranging from one to three days between August and October 1993.

Finally, in late October 1993, Plaintiff was given a long-term suspension. He was required to turn in his school books and was sent home from school. A due process hearing was scheduled for several days after the suspension, and notice of the hearing was sent to Plaintiff's mother. The notice was not actually received by Ms. Green until the day after the hearing, and Plaintiff and his mother did not appear at the hearing. At the hearing, the officials took into consideration that Plaintiff had five documented warnings of sagging as well as comments from several teachers regarding sagging, that Plaintiff had F grades in all his classes, and that Plaintiff had accrued excessive ab-

sences.[3] Plaintiff's suspension through the rest of the semester was upheld. This lawsuit followed.

The prohibition against sagging pants is part of a dress code that was adopted at Del Norte High School in response to a gang problem. Plaintiff does not deny that a gang problem exists at the school, but maintains that he has never been a gang member, is not affiliated with gangs, and is not aspiring to be a member of a gang. Defendants do not contend that Plaintiff is connected with gangs. Plaintiff asserts that he wears sagging pants as a statement of his identity as a black youth and as a way for him to express his link with black culture and the styles of black urban youth.

The Complaint alleges violations of Plaintiff's First Amendment right to freedom of speech, expression and association (Count I), and of his Fourteenth Amendment right to procedural due process (Count II). Plaintiff applied for a Temporary Restraining Order (TRO) at the time the complaint was filed. After a prompt hearing, I denied the application for a TRO.[4] A hearing on the motion for preliminary injunction was set for the following week. Prior to the hearing, Ms. Green discharged the attorneys who had filed the complaint, and I allowed them to withdraw. I granted Plaintiff's motion for a continuance. Ms. Green proceeded in a *pro se* status, during which time the Court held a hearing on and denied Plaintiff's motion for preliminary injunction. I later vacated that order when it became apparent that a person representing a minor cannot proceed *pro se*. Plaintiff was ordered to secure counsel or face dismissal. Present counsel entered his appearance on May 19, 1994.

**I. Motion for Summary Judgment.** As mentioned previously, pursuant to Fed. R.Civ.P. 12(b), the parties were notified that

---

1. By Order dated April 6, 1994, I notified the parties that the motion would be treated as one for summary judgment.

2. Plaintiff has now reached the age of majority.

3. There is a factual dispute about the reasons for and number of absences, as well as an assertion that Plaintiff had no notice that excessive absences would be considered at the hearing. I do

not reach these issues because they do not appear to be material.

4. Some time after the TRO hearing, Plaintiff transferred to another high school in the APS system that does not ban sagging pants. He was on non-credit status for that semester at that school.

because matters outside the pleadings had been presented by both sides and not excluded by the Court, Defendants' motion to dismiss would be treated as one for summary judgment.[5]

Under Fed.R.Civ.P. 56, summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. This means the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made a prima facie case for summary judgment, the burden is on the opposing party to designate specific facts demonstrating that there exists a genuine issue for trial.

> The inquiry performed [at summary judgment] is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). With these principles in mind I now turn to each of the claims in Plaintiff's complaint.

■ **First Amendment Claim—Freedom of Speech.** Plaintiff claims that Defendants' actions in suspending him from Del Norte High School for wearing so-called sagging pants are violative of his First Amendment rights to freedom of speech, expression and association. He asserts that the ban on sagging pants is unconstitutional as applied to

him, because the Defendants cannot demonstrate that his wearing of sagging pants interferes with appropriate discipline in the operation of the school.

■ Freedom of speech, while not absolute, is a paramount constitutional guarantee in our democracy. Although the First Amendment literally forbids the abridgement only of freedom of speech, its protection has long been recognized as reaching a wide variety of conduct that communicates an idea. *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 2538, 105 L.Ed.2d 342 (1989). Governmental constraints on individuals' communication of ideas must be measured against substantial and compelling societal goals such as safety, decency, individual rights of other citizens, and the smooth functioning of government. *See, e.g., United States v. O'Brien*, 391 U.S. 367, 376–82, 88 S.Ct. 1673, 1678–82, 20 L.Ed.2d 672 (1968) (statute prohibiting draft card burning not unconstitutional abridgment of freedom of speech because of important governmental interest in smooth and proper functioning of Selective Service system established by Congress to raise armies).

■ Public school students enjoy a degree of freedom of speech within the schoolhouse gates that is balanced against the added concern of the need to foster an educational atmosphere free from undue disruptions to appropriate discipline. *See Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) (suspension of students who wore black arm bands to school to protest Vietnam War unconstitutionally restricted students' freedom of expression absent showing that conduct would materially and substantially interfere with requirements of appropriate discipline in operation of school or impinge on rights of other students).[6]

---

5. Plaintiff did not file his own motion for summary judgment but did request that summary judgment be granted in his favor. Pl. Resp. at 32 ¶ 1.

6. Although *Tinker* is still the standard when students' expressions do not bear the imprimatur of the school itself and where the speech is not seen as vulgar or obscene, the Supreme Court has

more recently allowed restrictions even on students' nondisruptive "pure speech" in ways that would never be tolerated in the society at large. *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Bethel School Dist. v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986).

Types of expressive conduct that have enjoyed the protection of the First Amendment include the burning of an American flag at a political demonstration during the 1984 Republican National Convention to protest the policies of the Reagan administration and some Dallas-based corporations. *Texas v. Johnson, supra.* As mentioned above, students' wearing of black arm bands to school to protest the Vietnam War has also been held to enjoy First Amendment protection. *Tinker v. Des Moines Indep. Community School Dist., supra.* Similarly, putting a peace symbol on an American flag to protest the invasion of Cambodia and the killings at Kent State University has been afforded First Amendment protection. *Spence v. Washington,* 418 U.S. 405, 408, 94 S.Ct. 2727, 2729, 41 L.Ed.2d 842 (1974).

■ Not all conduct, however, can be labeled speech. *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). The wearing of a particular type or style of clothing usually is not seen as expressive conduct. *Tinker,* 393 U.S. at 507–08, 89 S.Ct. at 736–37 ("The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment."); *Freeman v. Flake,* 448 F.2d 258, 260–61 (10th Cir.1971) (school regulation of students' hair length does not violate First Amendment; wearing of long hair not akin to pure speech), *cert. denied,* 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972); *New Rider v. Board of Education,* 480 F.2d 693 (10th Cir.), *cert. denied,* 414 U.S. 1097, 94 S.Ct. 733, 38 L.Ed.2d 556 (1973) and *Hatch v. Goerke,* 502 F.2d 1189 (10th Cir.1974) (same, even where students are American Indians wearing long braided hair as symbol of religion and culture);[7] *Olesen v. Board of Education,* 676 F.Supp. 820, 822 (N.D.Ill.1987) (First Amendment does not protect student's wear-

ing of earring to express his individuality in violation of school dress code).

Defendants argue that Plaintiff has no constitutional right to engage in the practice of sagging because sagging is not speech, nor is it expressive conduct protected by the First Amendment. They assert that the mere fact that Plaintiff may intend to convey some message by his conduct does not bring that conduct within the protection of the First Amendment. Rather, they contend, the message subjectively intended to be conveyed must be a particularized rather than a nebulous one, and there must be a great likelihood that the message would be understood by people who observe it objectively.[8] Defendants also argue vigorously that if sagging is somehow protected by the First Amendment, the school dress code that prohibits sagging still passes constitutional muster.

■ Not every defiant act by a high school student is constitutionally protected speech. Under *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the flag burning case, a two part test must be met for non-verbal conduct to be "expressive conduct" and therefore speech protected under the First Amendment. First, the actor must intend to convey a particularized message, and, second, there must be a great likelihood that the message would be understood by those who observe the conduct. *Id.* at 404, 109 S.Ct. at 2538.

I denied the TRO because as of the time of the January 18, 1994 hearing, Plaintiff had not shown that his wearing of sagging pants was speech protected by the First Amendment. I ruled that Plaintiff had met the first prong of the *Texas v. Johnson* test in that the message Mr. Bivens intended to convey by wearing sagging pants, alluded to in his affidavit, was sufficiently particularized (sagging pants are a way for him to identify and express his link with his black identity, the

---

7. While not controlling, it should be noted that hair length, in contrast to sagging pants, is a relatively permanent condition that stays with a student after he or she exits the schoolhouse gates.

8. An additional argument put forth by Defendants is that Plaintiff abandoned his First Amendment claim at the hearing on Plaintiff's

Motion for Preliminary Injunction. At that hearing, Plaintiff was represented by his mother in a *pro se* capacity, which, as mentioned previously, is prohibited. I do not consider that any statements made by Ms. Green at that hearing constitute an abandonment of Plaintiff's First Amendment claim.

black culture and the styles of black urban youth). He had not, however, on the record before me at the hearing, established that anyone would understand this message, and so failed to show that he was likely to succeed on the merits of the second part of the test, the need to show an objectively recognizable message.

While he does acknowledge his chosen attire as a fashion, Plaintiff contends it is a popular style among minorities. Further, he argues, the wearing of sagging pants is part of a style known as "hip hop," whose roots are African American, and it represents a fashion statement by blacks and hispanics extensively. Finally, he asserts that if a style can be proven to have had its origins within a particular racial group and if it is extremely prominent among that group, it becomes in large part a group identity. "Such intentional identification clearly must involve freedom of expression." Response at 8.

Defendants have presented evidence in the form of affidavits that Plaintiff's subjective message supposedly conveyed by wearing sagging pants is by no means apparent to those who view it. For example, sagging is understood by some as associated with street gang activity and as a sign of gang affiliation. Sagging pants and other gang style attire is also understood by some as would-be gang affiliation, because it is often adopted by "wannabes," those who are seeking to become affiliated with a gang. Sagging is not necessarily associated with a single racial or cultural group, and sagging is seen by some merely as a fashion trend followed by many adolescents all over the United States.

In his response, Plaintiff merely argues that "there is a great likelihood that those who observe this expressive conduct will understand the message." Response at 10. Plaintiff has failed to come forward with any exhibits or affidavits tending to show a tri-

able issue of fact on this, the objective prong of the *Texas v. Johnson* test. I conclude that Plaintiff has failed to meet his burden to demonstrate a genuine issue for trial as to whether his wearing of sagging pants is constitutionally protected speech under the First Amendment.[9] Therefore, Defendants' motion for summary judgment will be granted on Plaintiff's First Amendment claim.

■ **Procedural Due Process Claim.** Plaintiff does not contest the procedural fairness of the verbal warnings and short-term suspensions that preceded his long-term suspension. Rather, he contends that his long-term suspension occurred without prior notice and an opportunity to be heard. He also avers that the prohibition against sagging is void for vagueness, and that his long-term suspension was occasioned by other procedural infirmities.

■ The judicial fountainhead of procedural due process rights of school children is *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The Supreme Court struck down a state law that gave unreviewable discretion to school administrators to impose short-term suspensions without prior notice or an opportunity for the student to be heard. While acknowledging that there is no constitutional right to an education at public expense, the Court noted that where state law creates a property right in a public education, it cannot destroy that right without due process of law. *Id.* at 573–74, 95 S.Ct. at 735–36.

> Having chosen to extend the right to an education ... generally, Ohio may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred.

\*   \*   \*   \*   \*   \*

The authority possessed by the State to prescribe and enforce standards of conduct

---

9. Even if the wearing of sagging pants could be construed as protected speech, I would have grave doubts about the merits of Plaintiff's claim. Not all constraints on protected expressive conduct by school children are unconstitutional. Defendants have made a strong showing, albeit by way of affidavit and before full discovery, that the dress code adopted at Del Norte was a rea-

sonable response to the perceived problem of gangs within the school. Together with other measures taken by school administrators, adoption of the dress code may have been responsible for the perception of an improved climate and learning environment at the school. These are laudable educational goals that federal courts should be hesitant to impede.

in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.

*Id.* at 575, 95 S.Ct. at 736. The Court also recognized the students' liberty interest in their reputations among their fellow pupils and their teachers, as well as the potentially deleterious effect of a suspension on the students' later opportunities for higher education and employment. *Id.* at 575–76, 95 S.Ct. at 736–37. Thus, Plaintiff has a provisional right to continue his education at Del Norte High School unless his suspension is accompanied by fair procedures designed to protect that right.

The following chronology of events is not disputed. Plaintiff was warned about his sagging pants early in the school term, and was later subjected to several short-term suspensions for wearing his pants that way. On Friday, October 22, 1993 he again wore sagging pants to school. The assistant principal, who had warned Plaintiff the previous day that he would be suspended if he wore his pants sagging again, imposed a long-term suspension for the remainder of the school semester. On October 26, 1993 (a Tuesday) notice of a due process hearing on the suspension to be held on Friday, November 5, 1993 was sent by certified mail to Ms. Green, return receipt requested. Ms. Green was not home at the time of delivery and a postal notice was left in her mail box. Inexplicably, Ms. Green did not actually receive the hearing notice until November 6, one day after the scheduled hearing.[10] At the hearing, which took place in the absence of Plaintiff

and his mother, the long-term suspension for the remainder of the school term was upheld.

Defendants have presented undisputed evidence that written notice of the hearing scheduled for November 5, 1993 [11] was sent by certified mail to Plaintiff's mother on October 26, 1993, 10 days before the hearing. This was adequate notice because it was reasonably calculated to reach the parent well in advance of the hearing. *See Staton v. Mayes,* 552 F.2d 908, 912 (10th Cir.) (notice mailed 13 days prior to hearing is adequate), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). The opportunity to be heard was granted by the scheduling and notice of this hearing. Not only that, but APS provides two levels of appeal after the Region Office hearing.[12] Furthermore, when a parent who has not participated in the hearing at the Region Office appeals to the next level (the Superintendent), a new hearing is routinely granted. Due process requires no more than this.

■ Plaintiff argues that when his mother did not appear at the hearing, the school should have called her before proceeding with the hearing. While this might have been a more compatible way to proceed, I cannot agree that this is a constitutionally required duty. The notice given was adequate notwithstanding lack of receipt by the parent. The hearing was held in the parent's absence, but no constitutional deprivation occurred.

■ I am mindful that under 42 U.S.C. § 1983, a civil rights litigant may not be required to exhaust his administrative remedies. *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). If reasonably adequate procedures are available, there is simply no procedural due process violation, whether or not the litigant used those procedures. The failure of Plain-

---

10. Plaintiff alleges Ms. Green telephoned the post office immediately after receiving the postal notice, but offers no explanation for why the notice was not redelivered by the post office until after the hearing, over a week later. I do not consider the reasons for this delay material to the due process inquiry. There is no allegation that the delay was caused by Defendants.

11. This hearing is referred to as the "Region Office" hearing.

12. A copy of the APS Student Behavior Handbook was included with the notice of the hearing sent to Ms. Green. It sets forth the appeals available to students subject to long-term suspension. Therefore, Ms. Green knew of these procedures.

tiff and his mother to avail themselves of these procedures is irrelevant to the issue of whether the available procedures were adequate. I conclude that they were.

■ Plaintiff also argues that the dress code suffers from unconstitutional vagueness. I reject the notion that a school dress code prohibiting sagging must be expressed in terms of inches or millimeters, any more than other styles prohibited by the dress code must be quantified exactly. For example, short shorts are not described in terms of a measurement, and "half-shirts" and "inappropriate tank tops" are prohibited without further precision. The need to maintain appropriate discipline in schools must favor more administrative discretion than might be permitted in other parts of our society.

■ Plaintiff argues that the post-suspension due process hearing was inadequate because it was held on the eleventh school day after he was suspended instead of the tenth.[13] In *Goss v. Lopez* the Supreme Court held that a 10–day suspension is not *de minimis* and in most cases requires pre-suspension notice of the nature of the alleged misconduct and a rudimentary pre-suspension hearing, such as an informal discussion of the alleged misconduct between the disciplinarian and the student. *Goss v. Lopez,* 419 U.S. at 581–83, 95 S.Ct. at 739–40. In *dicta,* the Court added that longer suspensions may require more formal procedures. *Id.* at 584, 95 S.Ct. at 740. Here, Plaintiff was given prior notice that he would be suspended for continuing to wear saggy pants, and he had several opportunities to discuss the matter with the assistant principal before he was suspended long term. A more formal hearing was scheduled. If the more formal hearing occurred on the eleventh day after the suspension, this certainly does not give rise to a deprivation of constitutional dimension under any reading of *Goss.* It would be anomalous indeed for a federal court to dictate an exact number of days within which a formal hearing must be held by the school, in light of this language:

> [T]he interpretation and application of the Due Process Clause are intensely practical matters and ... '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' [citation omitted] ... We are also mindful of our own admonition:
>
> > 'Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint.... By and large, public education in our Nation is committed to the control of state and local authorities.' [citation omitted]

*Id.* at 578–79, 95 S.Ct. at 738–39.

Plaintiff complains about other procedural matters, which either are belied by the record or fail to achieve constitutional dimensions. Therefore, summary judgment will be granted as to Count II.

**II. Motion to Amend.** Plaintiff seeks to file an amended complaint which adds counts based on alleged state tort violations, which adds claims for damages in addition to the declaratory and injunctive relief sought in the original complaint, and which adds an additional federal count (equal protection).[14] Under Fed.R.Civ.P. 15, "leave to amend shall be freely given when justice so requires."

■ In view of my disposition of the existing federal claims, I decline to take on what is essentially a state law case, and likely a futile one at that. Furthermore, the request to amend is untimely. This motion was filed some 14 months after current counsel entered his appearance in this case. I was prepared to and in fact did rule on Plaintiff's application for preliminary injunction in March 1994, but was forced to vacate that ruling because of the *pro se* status of Plaintiff's mother and next friend at the time. Defendants' motion for summary judgment

---

**13.** Plaintiff was suspended on a Friday morning, and his hearing was scheduled on a Friday morning two weeks later. I count that as 10 school days. For purposes of this discussion, however, I will assume 11 days is correct.

**14.** In the proposed amended complaint, Richard Bivens is suing on his own behalf because he has reached the age of majority, and his mother, Susan Green, has been added as an additional plaintiff for alleged damages she has suffered personally.

has been pending since March 1994, having been filed shortly after the preliminary injunction hearing, and current counsel responded to the motion in June 1994. The only proffered justification for the delay is that counsel has now had the opportunity to further review and research the "extensive facts and issues of law," and that new facts and damages have been discovered after review of all the documents. Pl. Motion at 3. The only "new evidence" cited is a letter having to do with Plaintiff's non-credit status at the school to which he transferred, Pl. Reply at 10, a fact neither new nor material to Plaintiff's federal claims.

I find and conclude that the interests of justice do not favor the amendment, and that Plaintiff's motion to amend is not well taken and should be denied.

### ORDER

NOW, THEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment should be and is hereby GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion For Leave to Amend Complaint should be and is hereby DENIED.