**Rory J. ATCITTY, By and Through his parent Roger ATCITTY, Sr., Plaintiff and Appellant,**

v.

**BOARD OF EDUCATION OF the SAN JUAN COUNTY SCHOOL DISTRICT, and Lyman Grover, Defendants and Appellees.**

No. 981096–CA.

Court of Appeals of Utah.

Nov. 5, 1998.

Eric P. Swenson and Rosalie Reilly, Monticello, for Appellant.

L. Robert Anderson and Daniel G. Anderson, Monticello, for Defendants and Appellees.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Appellant appeals the trial court's grant of summary judgment to the Board of Education of the San Juan County School District (Board). Specifically, appellant contends the Board violated his due process rights when it suspended him for ten days. He also argues the trial court erred when it denied his Motion to File An Amended Complaint. We affirm.

## FACTS

" 'In appeals from summary judgment, we review the facts in a light most favorable to the nonprevailing party.' " *Palmer v. Hayes,* 892 P.2d 1059, 1061 (Utah Ct.App.1995) (quoting *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1386 (Utah 1989)).

On May 4, 1996, appellant, a student at Whitehorse High School in San Juan County, went on a school band trip to Durango, Colorado. Following the trip, the principal of Whitehorse High (principal) was informed that appellant and a number of other students were involved in an incident involving marijuana while on the trip. On May 13, the principal contacted appellant's father, who came to the high school with his wife and spoke with the principal concerning the allegations. The principal told appellant's parents that appellant was accused of using marijuana on the school band trip and that he wished to speak with appellant about the incident. Appellant's father responded that he had instructed appellant not to answer the principal's questions unless he was present. On May 14, the principal met with appellant and asked him to provide a written statement about the alleged incident. Appellant said that his father had told him not to speak with the principal unless he was present. The principal repeatedly asked appellant to discuss the incident and to provide a written statement; appellant refused to cooperate. Appellant contacted his father, who soon came to pick him up, and, without responding to the principal's questions, took appellant home.

At this point, the principal was still conducting his investigation, and had not decided whether appellant would face suspension or expulsion. Finally, on May 16, the principal decided to suspend appellant for his involvement in the marijuana incident.

Following school policy, the principal contacted the Navajo Nation Police and informed them of the nature of his investigation. An officer was present when the principal told the students involved of his decision to suspend them for ten days. When questioned by the officer, appellant, for the first time, denied any use of marijuana on the band trip. Appellant's father arrived at the school to pick up appellant and refused to speak with the principal concerning the suspension's terms, telling the principal that he "would hear from [appellant's] attorney."

Appellant filed a complaint alleging that he was denied due process when the principal suspended him for ten days. Both parties filed motions for summary judgment. Before the trial court ruled on either motion, appellant filed a Motion to Amend his Complaint. The trial court denied appellant's Motion to Amend, denied appellant's summary judgment motion, and granted the Board's summary judgment motion. This appeal followed.

## ANALYSIS

### I. Appellant's Suspension Did Not Violate His Due Process Rights

"A trial court's decision to grant or deny a motion for summary judgment is a legal one and will be reviewed for correctness." *Salt Lake City v. Silver Fork Pipeline Corp.,* 913 P.2d 731, 733 (Utah 1995) (citation omitted). Appellant argues his due process rights were violated when he was suspended from Whitehorse High. We disagree. Although Utah's courts have not previously addressed this issue, the United States Supreme Court

faced precisely the issue now before us in *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). *Goss* recognized "a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574, 95 S.Ct. at 736. In *Goss*, a number of Ohio public school students challenged various school suspensions of up to ten days arguing that their due process rights were violated when they were suspended without a hearing either prior to or soon after the suspensions. The Court affirmed the students' suspensions and provided clear direction as to the due process requirements in school suspension claims. *See id.* at 567, 582–84, 95 S.Ct. at 732, 740–41.

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection *with a suspension of 10 days or less,* that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. *We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.*

*Id.* at 581–82, 95 S.Ct. at 740–41 (emphasis added). The Court characterized the notice and hearing requirements as "an informal give-and-take between student and disciplinarian, preferably prior to the suspension." *Id.* at 584, 95 S.Ct. at 741.

■ *Goss* remains the guiding decision in public school suspension cases of ten days or less.[1] *See e.g., Smith v. Severn,* 129 F.3d 419, 428–29 (7th Cir.1997) (affirming three-day suspension where minimal due process rights described in *Goss* were met); *C.B. v. Driscoll,* 82 F.3d 383, 385–88 (11th Cir.1996) (affirming two nine-day suspensions where "rudimentary" requirements of *Goss* were met); *Keough v. Tate County Bd. of Educ.,* 748 F.2d 1077, 1080 (5th Cir.1984) (affirming ten-day suspension where student was afforded opportunity for "an informal give-and-take" session with school principal); *Bivens v. Albuquerque Pub. Sch.,* 899 F.Supp. 556, 561 (D.N.M.1995) ("The judicial fountainhead of procedural due process rights of school children is *Goss v. Lopez* "), *aff'd without op.* 131 F.3d 151 (10th Cir.1997); *Byrd v. Irmo High Sch.,* 321 S.C. 426, 468 S.E.2d 861, 868 (S.C.1996) (affirming short term suspension where student, in "an informal give-and-take" with both school security guard and principal, admitted having consumed alcohol); *Wood v. Henry County Pub. Sch.,* 495 S.E.2d 255, 258–59 (Va.1998) (affirming ten day suspension where assistant principal gave student "an opportunity to explain his version of the facts" and student was told of accusations against him and their bases).

1. Appellant urges us to apply the three-factor balancing test adopted by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). We conclude *Mathews* is inapplicable to this case. The *Goss* court discussed the same three-part balancing test utilized in *Mathews*, but did not apply it to the unique setting of a school suspension of ten days or less. *See Goss*, 419 U.S. at 577–584, 95 S.Ct. at 738–41. Appellant does not direct us to, and this court has been unable to locate, a single case applying *Mathews* to a school suspension of ten days or less. *See, e.g., Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir.1989) (noting *Mathews* due process test, but applying *Goss* to school suspension of less than ten days and suspension from high school football team for sixty days); *Paredes v. Curtis*, 864 F.2d 426, 428–29 (6th Cir.1988) (declining to apply *Mathews* to a routine school suspension of less than ten days); *Craig v. Selma City Sch. Bd.*, 801 F.Supp. 585, 591 (S.D.Ala.1992) (utilizing *Goss* for suspension of less than ten days and applying *Mathews* to expulsion). Thus we decline to apply *Mathews'* enhanced due process doctrine here.

■ We conclude that appellant received *Goss'* procedural due process requirements. When the principal first learned that appellant was a student involved in the alleged incident, he met with appellant's parents and told them of appellant's alleged drug use. The next day, the principal met individually with all the students involved in the incident, including appellant, and asked them to provide written statements of their versions of the alleged drug use that took place on the band trip. Despite the principal's repeated requests that appellant provide a written statement or discuss the incident with him, appellant responded that his father told appellant not to speak with the principal unless he was present. When appellant's father came to the school to pick up appellant, the principal was again rebuffed when he attempted to discuss the accusations with the father.

The principal provided appellant with several opportunities in "an informal give-and-take" setting to tell his side of the story. Appellant repeatedly refused. Appellant complains that the principal did not specifically tell him of the evidence against him. We disagree. First, appellant did not deny the accusations in the first three encounters with the principal, but only did so after the principal had made the decision to suspend. Further, the principal's statements to appellant and his parents summarized the evidence he relied on in making the suspension decision. The principal initially told appellant's parents that appellant was likely involved in a marijuana incident on the school band trip. He later provided appellant with opportunities to tell his side of the story concerning drug use on the band trip. The principal sought numerous times to further engage appellant and his father in a discussion of the band trip, but was repeatedly rebuffed. The informal setting in which the principal provided appellant an opportunity to discuss or refute the allegations was all the procedural due process owed to appellant. We therefore conclude that appellant's suspension did not violate his due process rights.[2]

## II. Amended Complaint

■ Appellant next argues the trial court erred when it denied his Motion For Leave to File An Amended Complaint. We will not overturn a trial court's denial absent an abuse of its discretion. *See Timm v. Dewsnup*, 921 P.2d 1381, 1389 (Utah 1996). Rule 15(a) of the Utah Rules of Civil Procedure provides that after responsive pleadings have been served, "a party may amend his pleading only by leave of court ...; and leave shall freely be given when justice so requires." "Appellate courts uphold a trial court's denial of a motion to amend if the amendment is sought late in the course of litigation, if the movant was aware of the facts underlying the proposed amendment long before its filing, and if there is no adequate explanation for the delay." *Swift Stop, Inc. v. Wight*, 845 P.2d 250, 253 (Utah Ct.App.1992) (citations omitted). Utah courts should consider the following factors in determining whether to allow amendment: (1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party. *Id.* at 253 (citing *Westley v. Farmer's Ins. Exch.*, 663 P.2d 93, 94 (Utah 1983) (additional citations omitted)).

■ We conclude that the trial court did not abuse its discretion in denying appellant's Motion to Amend. First, appellant attempted to set forth new issues in his amended complaint. Second, appellant filed his motion approximately two-and-a-half months *after* the discovery deadline, and after both parties had filed summary judgment motions. Third, we conclude that appellant was aware of the "new issues" raised in the amended complaint long before his motion

---

2. Appellant raises three other related issues, complaining of: (1) the school board's failure to provide home schooling services; (2) the trial court's determination that the principal was impartial; and (3) the trial court's decision to deny appellant's Motion to Strike the principal's affidavit. "An appellate court has discretion as to the nature and extent of the opinions it renders and we need not 'address in writing each and every argument, issue, or claim raised and properly before us on appeal.'" *State v. Tucker*, 800 P.2d 819, 824 n. 9 (Utah Ct.App.1990) (quoting *State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (additional citation omitted)). Because we conclude these issues are without merit, we do not address them.

was filed, and that there was no justifiable reason for the delay. We therefore affirm the trial court's denial of appellant's Motion to Amend his complaint.

## CONCLUSION

In sum, we affirm the grant of summary judgment to the Board of Education of the San Juan County School District. Appellant was provided with several opportunities for an "informal give-and-take" discussion with the Whitehorse High School principal where he was informed of the allegations against him and could have explained his side of the story. We thus conclude his due process rights were not violated. We further conclude the trial court did not abuse its discretion when it denied appellant's Motion to Amend.

GREENWOOD and JACKSON, JJ., concur.