2001 UT App 400

Sandra L. TRETHEWAY, Trustee of
the Tretheway Family Trust,
Plaintiff and Appellant,

v.

Robert FURSTENAU; Blair Nebeker;
UPNLC; and Advanced Properties International, Inc., a Nevada corporation,
Defendants and Appellees.

No. 20000907–CA.

Court of Appeals of Utah.

Dec. 20, 2001.

Larry S. Jenkins, Wood & Crapo LLC, Salt Lake City, and Richard L. Tretheway, Springville, for Appellant.

David M. Wahlquist and Merrill F. Nelson, Kirton & McConkie, Salt Lake City, for Appellees.

Before Judges GREENWOOD, JACKSON, and BENCH.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Appellant Sandra L. Tretheway, Trustee of the Tretheway Family Trust (Tretheway), appeals the district court's grant of Appellees' (Borrowers) motion for summary judgment and its denial of her motion for summary judgment. Tretheway also appeals the denial of her motion to amend her complaint. The district court concluded that the promissory note and trust deed unambiguously required reconveyance of all trust deed property because the obligation secured by the trust deed was satisfied. The district court also concluded that Tretheway's motion to amend was untimely and legally insufficient. Borrowers argue that the district court correctly ruled on these motions, and request attorney fees and costs on appeal.[1] We affirm and remand for a determination of costs and attorney fees on appeal.

## BACKGROUND [2]

¶ 2 On February 1, 1999, Tretheway and Borrowers executed a promissory note

---

1. Borrowers also challenge our jurisdiction on appeal. We addressed this issue in our May 3, 2001 Order Denying Motion to Stay; Order Concluding Court Has Jurisdiction. Accordingly, we do not address this issue further.

2. "In reviewing a grant of summary judgment, we review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Regal Ins. Co. v. Bott*, 2001 UT 71, ¶ 2, 31 P.3d 524.

(Promissory Note) for a $150,000 loan, and a trust deed (Trust Deed) to secure payment of the promissory note. The Trust Deed conveyed two properties (Trust Property) in trust to Tretheway, one with apartments (Apartments Property) and the other with a gas station (Gas Station Property). Exhibit "A" attached to the Trust Deed describes both the Apartments Property and the Gas Station Property. The tax serial numbers of the Apartments Property were attached to the Promissory Note as "Exhibit 'A,'" and a description of the Gas Station Property was attached as "Exhibit 'B.'"

¶ 3 The Promissory Note contains three paragraphs in a section designated as "RELEASES" (Release Section). The first paragraph grants Borrowers a partial release of "A SECOND TRUST DEED ON THE PROPERTY ATTACHED HERETO AS EXHIBIT 'A,'" the Apartments Property, "upon the payment of the sum of $20,000.00 per [apartment] sold to" Tretheway. The second paragraph states that "[u]pon the payment of $150,000.00 to [Tretheway] ... the Trust Deed described in Exhibit 'A' shall be released." Finally, paragraph three grants Borrowers a transfer or conveyance of four items "on the payment of the som [sic] of $53,400.00 for the purchase of the note Described [sic] as the Camillo note, now owned by the Tipton Family Trust": (1) release of "[t]he first trust deed on the property described in Exhibit 'B,'" (2) assignment of the Camillo note to Borrowers, (3) assignment of a "Deed of trust to Blair Nebeker," and (4) any additional papers needed to transfer the rights to a cause of action in a case related to the Camillo note.

¶ 4 Borrowers paid $150,000 plus interest to Tretheway on June 23, 1999, and requested reconveyance of the Trust Property. Tretheway reconveyed the Apartments Property, but refused to reconvey the Gas Station Property. Tretheway then filed an action for a declaratory judgment in district court, seeking a declaration "that [Tretheway] need not execute the release for the property described in Exhibit 'B' to the promissory note until [Borrowers] can pay $150,000.00 and pay the additional sums as described in paragraph 3 of the Promissory Note." Tretheway and Borrowers both filed motions for summary judgment.

¶ 5 The district court denied Tretheway's motion for summary judgment and granted the motion submitted by Borrowers. The district court concluded that the "unambiguous language" of both the Promissory Note and the Trust Deed merely created alternative release provisions and that paragraph two required release of the Trust Deed upon payment of $150,000. Tretheway then filed a motion to amend her complaint to include a claim for reformation of the Trust Deed and Promissory Note based on mutual mistake. The district court also denied this motion.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Tretheway appeals the grant of Borrowers' motion for summary judgment. "Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Regal Ins. Co. v. Bott*, 2001 UT 71, ¶ 6, 31 P.3d 524 (citing Utah R. Civ. P. 56(c)). We review a district court's grant of summary judgment for correctness, affording no discretion to the district court's decision. *See Utah Coal & Lumber Rest., Inc. v. Outdoor Endeavors Unlimited*, 2001 UT 100, ¶ 9, 40 P.3d 581. Whether the language of the Promissory Note and Trust Deed is unambiguous also presents a question of law, which we review for correctness. *See Dixon v. Pro Image, Inc.*, 1999 UT 89, ¶ 14, 987 P.2d 48.

¶ 7 Tretheway also appeals the denial of her motion to amend her complaint. We review a district court's decision on a motion to amend under an abuse of discretion standard. *See Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1281 (Utah 1998).

## ANALYSIS

¶ 8 We first analyze the language of the Promissory Note and the Trust Deed to determine whether the trial court correctly construed the language of these documents. Next, we review the district court's decision to deny Tretheway's motion to amend. Fi-

nally, we address Borrowers' request for attorney fees and costs on appeal.

## I. Releases Granted by the Promissory Note

¶ 9 "Whether contract language is ambiguous is a question of law." *Dixon v. Pro Image, Inc.*, 1999 UT 89,¶ 14, 987 P.2d 48. When contract language is unambiguous, we interpret the contract as a matter of law. *See id.* "In so doing, [we] must attempt to construe the contract so as to 'harmonize and give effect to all of [its] provisions.'" *Id.* (alterations in original) (quoting *Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992)). Further, "when two agreements are 'executed "substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized if possible."'" *Shields v. Harris*, 934 P.2d 653, 657 (Utah Ct.App.1997) (quoting *Winegar v. Froerer Corp.*, 813 P.2d 104, 109 (Utah 1991) (citation omitted)). Here, the Promissory Note and the Trust Deed were executed on the same day and relate to the same transaction, thus we "'"construe[them] as a whole."'" *Id.*

¶ 10 When construed with the Trust Deed, the language of the Release Section unambiguously requires reconveyance of all Trust Property upon payment of the $150,000 loan obligation. The key language of each paragraph defines what property or trust deed is to be released on receipt of specified payments. The first paragraph gives Borrowers the option of receiving partial releases of individual apartments of "A SECOND TRUST DEED ON THE PROPERTY ATTACHED HERETO AS EXHIBIT 'A' ... upon the payment of $20,000.00." Exhibit "A" of the Promissory note identifies the Apartments Property by its tax serial numbers. The "TRUST DEED" on that property was the Trust Deed. Thus, Borrowers had the option of obtaining partial releases of individual apartments conveyed by the Trust Deed if they wished to make $20,000 installment payments on the principal of the loan obligation.

¶ 11 The second paragraph's wording is slightly different. The paragraph states, "Upon payment of $150,000.00 to [Tretheway] ... by Borrowers ... the Trust Deed described in Exhibit 'A' shall be released." Unlike paragraphs one and three, which refer to *property* described by Exhibit "A" or "B" attached to the Promissory Note, the second paragraph refers to the *trust deed* described in Exhibit "A," which contains the legal descriptions of both properties. Accordingly, the second paragraph of the Release Section requires complete release of the Trust Deed upon Borrowers' payment to Tretheway of $150,000. Importantly, this paragraph does not limit or specify the properties that must be released. Rather, it states that "the Trust Deed ... shall be released."

¶ 12 On June 23, 1999, Borrowers paid Tretheway $150,000 plus interest and requested reconveyance of the Trust Property, thus fulfilling the requirements of the second paragraph. Upon receipt of Borrowers' payment, Tretheway is required to release the Trust Deed. A partial release of the Trust Property is not sufficient. This interpretation comports with Utah Code Ann. § 57–1–33.1(1)(a) (Supp.1999), which requires the trustee of a trust deed to reconvey trust property to the beneficiary "[w]hen an obligation secured by a trust deed has been satisfied."

¶ 13 The third paragraph does not create an additional burden on the Borrowers. Instead, it merely gives Borrowers the right to purchase the Camillo note and obtain release of the Gas Station Property, assignment of the Camillo note, assignment of a trust deed, and the rights to a cause of action in a case related to the Camillo note. The language of the paragraph states, "The first trust deed on the property described in Exhibit 'B' ... shall be released on the payment of the som [sic] of $53,400.00 for the *purchase of the note* Described [sic] as the Camillo note." (Emphasis added.) Exhibit "B" of the Promissory Note describes the Gas Station Property. This language differs from the previous two paragraphs in that it only allows release of "the property described in Exhibit 'B,'" that is, the Gas Station Property. This paragraph does not make "purchase" of the Camillo note the exclusive manner to obtain release of the Gas Station Property.

¶ 14 Accordingly, the district court did not err in concluding that the language of the Promissory Note and the Trust Deed unambiguously created payment alternatives for Borrowers with corresponding releases. Further, the district court correctly ruled that the Release Section does not require purchase of the Camillo note as the exclusive manner for Borrowers to obtain release of the Gas Station Property. Finally, the district court correctly concluded that Borrowers' payment of $150,000 plus interest to Tretheway requires release of the Trust Deed securing all Trust Property, pursuant to the second paragraph of the Release Section.

## II. Tretheway's Motion to Amend

¶ 15 Tretheway also appeals the district court's denial of her motion to amend her complaint to include a claim for reformation of the Promissory Note due to mutual mistake. After a responsive pleading, "a party may amend his [or her] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Utah R. Civ. P. 15(a). "In reviewing a trial court's denial of a motion to amend, we will affirm the denial unless the trial court abused its discretion." *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1281 (Utah 1998).

¶ 16 The district court's discretion is, nevertheless, limited. An " 'outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion.' " *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (U.S.Mass.1962)). Failure to state or explain a justifying reason is not an abuse of discretion if "the reason for denial is apparent." *Id.* at 1282. In *Atcitty v. Board of Education*, 967 P.2d 1261 (Utah Ct.App. 1998), we set forth the following three factors to be used to consider a motion to amend: "(1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party." *Id.* at 1264.

¶ 17 In *Atcitty*, we concluded "that the trial court did not abuse its discretion in denying appellant's Motion to Amend," for three reasons:

First, appellant attempted to set forth new issues in his amended complaint. Second, appellant filed his motion approximately two-and-a-half months after the discovery deadline, and after both parties had filed summary judgment motions. Third, we conclude that appellant was aware of the "new issues" raised in the amended complaint long before his motion was filed, and that there was no justifiable reason for the delay. We therefore affirm the trial court's denial of appellant's Motion to Amend his complaint.

*Id.* at 1264–65. Here, not only did Tretheway file her motion to amend "after both parties had filed summary judgment motions," *id.* at 1264, but she also waited until after the district court granted summary judgment adverse to her. Further, because of the nature of her pleading, Tretheway "was aware of the 'new issues' raised in the [proposed] amended complaint long before [her] motion was filed." *Id.* at 1264–65. Although she claims she "had no reason to plead a claim for reformation of the written agreement" until after the district court ruled, the Borrowers' pleadings claiming the documents unambiguously supported an opposite interpretation should have alerted her to the possibility of an adverse ruling. Moreover, Tretheway recognized Borrowers' position prior to filing her complaint. She stated in the complaint that she and Borrowers "disagree on whether payment of $150,000.00 requires the plaintiff to execute a release on the property described in Exhibit 'A' and 'B' to the Promissory Note." Accordingly, Tretheway had "no justifiable reason for the delay." *Id.* at 1265.

¶ 18 The Utah Supreme Court reasoned similarly when concluding the district court did not abuse its discretion in *Neztsosie v. Meyer*, 883 P.2d 920 (Utah 1994). There, the plaintiff filed an amended complaint which alleged strict liability for a dog bite six months after filing the original complaint. *See id.* at 922. Plaintiff "moved for leave to file a second amended complaint," to add a

common law negligence claim, two-and-a-half years later and "over a month after the order granting [defendant's] motion for summary judgment was entered." *Id.* The supreme court concluded that, because of the elapsed time "and the fact that plaintiffs knew or should have known of the negligence claim when the amended complaint was filed," it could not "conclude that the trial court exceeded the bounds of its discretion when it denied the motion to amend." *Id.* Similarly, here Tretheway moved the court to amend her complaint nine months after she filed it and "over a month after the order granting [Borrowers'] motion for summary judgment was entered." *Id.* Further, as previously stated, Tretheway "knew or should have known of the [reformation claim] when the [original] complaint was filed." *Id.* The foregoing analysis of *Atcitty* and *Neztsosie* also shows that, on the similar facts here, Borrowers would certainly be prejudiced to some degree if the motion to amend were granted. *See, e.g., Atcitty,* 967 P.2d at 1264–65.

¶ 19 The district court also denied Tretheway's motion to amend because the motion was legally insufficient. In spite of an analysis of the factors outlined in *Atcitty,* a court should deny motions to amend "when the moving party seeks to assert a new claim that is legally insufficient or futile." *Andalex Res., Inc. v. Myers,* 871 P.2d 1041, 1046 (Utah Ct.App.1994); *see also Timm v. Dewsnup,* 921 P.2d 1381, 1389 (Utah 1996) ("Further, a motion to amend should not be granted where the pleader does not set forth a legally sufficient claim."). Here, Tretheway's motion to amend "seeks to assert a new claim that is legally insufficient." *Id.*

¶ 20 In *Timm,* the Utah Supreme Court considered Dewsnup's motion to amend that contained three claims Dewsnup wanted to add to her counterclaim. *See Timm,* 921 P.2d at 1388. The district court denied all three, giving reasons for the denial. *See id.* at 1388–89. Dewsnup's third "proposed amended counterclaim sought reformation of the trust [deed] to exclude the Oak City property, alleging that the Oak City property was included 'contrary to the agreement between the parties.' " *Id.* at 1390 (citation omitted). The supreme court noted that

" '[t]o reform a warranty deed or any written instrument, the plaintiff must show mutual mistake of the parties or mistake on the part of one and fraud or inequitable conduct on the part of the other,' " resulting in an instrument that " 'reflects something neither party had intended or agreed to.' " *Id.* (quoting *Bown v. Loveland,* 678 P.2d 292, 295 (Utah 1984)). The court further noted that "[R]ule 9(b) of the Utah Rules of Civil Procedure requires, 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' " *Id.* (quoting Utah R. Civ. P. 9(b)). The supreme court in *Timm* observed that Dewsnup "merely claim[ed] that the Oak City property was included contrary to the parties' agreement," and concluded that Dewsup's claim was "not stated with particularity." *Id.* Accordingly, the court held that "the proposed amended counterclaim to reform ... [was] not legally sufficient," and "affirm[ed] the trial court's dismissal of Mrs. Dewsnup's motion to amend with respect to this claim." *Id.* at 1390–91.

¶ 21 The circumstances here are nearly identical. Tretheway seeks to amend her complaint to assert a claim for reformation of the Trust Deed and Promissory Note, alleging,

> Through the mutual mistake of the parties, the written agreement was incorrectly drawn and does not accurately express the real understanding of the parties, in that it was understood and orally agreed between the parties that Plaintiff would not have to reconvey the property known as the gas station property until the DiCamillo note was paid off.

Tretheway's allegation parallels Dewsnup's allegation in *Timm,* and similarly is "not stated with particularity." *Id.* at 1390. Thus, we conclude that Tretheway's "proposed amended [complaint] to reform the trust deed ... is not legally sufficient." *Id.* at 1390–91. Accordingly, we affirm the district court's dismissal of Tretheway's motion to amend.

### III. Attorney Fees and Costs

¶ 22 Borrowers were awarded attorney fees and costs, according to the terms of

the Promissory Note and Trust Deed, for prevailing in the district court. Borrowers now ask for attorney fees and costs on appeal. " ' "A party who was awarded attorney fees and costs at trial is also entitled to attorney fees and costs if that party prevails on appeal." ' " *Gardner v. Madsen*, 949 P.2d 785, 792 (Utah App.1997) (quoting *Living Scriptures, Inc. v. Kudlik*, 890 P.2d 7, 11 (Utah Ct.App.1995) (citation omitted)). Borrowers have prevailed on appeal, thus, we grant Borrowers' request. We remand to the district court for a determination of attorney fees and costs on appeal.

### CONCLUSION

¶ 23 We conclude that the unambiguous language of the Promissory Note and Trust Deed, as well as Utah Code Ann. § 57-1-33.1(1) (Supp.1999), requires reconveyance of the Trust Property because Borrowers satisfied the requirements of the second paragraph of the Release Section by payment of the obligation secured by the Trust Deed. We also conclude that Tretheway's motion to amend was untimely and legally insufficient. Finally, we award Borrowers attorney fees and costs on appeal.

¶ 24 Accordingly, we affirm the district court's rulings, and remand for a determination of attorney fees and costs on appeal.

¶ 25 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and RUSSELL W. BENCH, Judge.