Louis L. TIMM, John Neiuwland, and Floyd M. Childs, trustees of United Precision Machine and Engineering Company Profit Sharing Trust; ABCO Insurance Agency, Inc., a Utah corporation; and Joseph L. Henriod, trustee for the Annette Jacob Trust, Plaintiffs and Appellees,

v.

T. LaMar DEWSNUP and Aletha Dewsnup; Arrow Investment Co., a limited partnership; The Federal Land Bank of Berkeley; Imperial Land Title Inc., as trustee, and Eugene L. Carson and Elaine Carson as beneficiaries; Stringham, Mazuran, Larsen & Sabin, a professional corporation; Mineral Fertilizer Co., Inc.; and Harry V. Kaps, Defendants and Appellants.

No. 950073.

Supreme Court of Utah.

Aug. 13, 1996.

Michael Z. Hayes, Lisa G. Romney, Salt Lake City, for Timm, Neiuwland, Childs, and United Precision Machine and Engineering Company Profit Sharing Trust.

Russell A. Cline, Salt Lake City, for Dewsnups and Arrow Investment.

RUSSON, Justice:

This matter comes before us for the second time. The first appeal resulted in remand to the trial court for further consideration. *Timm v. Dewsnup,* 851 P.2d 1178 (Utah 1993) (*Timm I*). Defendant Aletha Dewsnup[1] now appeals the trial court's (1) denial of her motion to reconsider summary judgment, (2) denial of her motion to amend her counterclaim, (3) dismissal of her counterclaim, (4) release of the lis pendens on the trust deed property, and (5) denial of her jury demand on her counterclaim. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

While the facts in this case were detailed in *Timm I,* we recite those facts leading up to *Timm I* to establish the background for this appeal. Facts relating to each issue now on appeal are developed in greater detail in the corresponding analysis section.

In June of 1978, T. LaMar and Aletha Dewsnup, farmers near Delta, Utah, borrowed $119,000 for a two-year period to purchase a motel. The three lenders were the Annette Jacob Trust Fund, United Precision Machine and Engineering Company Profit Sharing Trust, and ABCO Insurance Agency,

---

1. Defendant T. LaMar Dewsnup, Aletha's husband, died in 1986 during the pendency of this action.

Inc. (the lenders). The Dewsnups executed three promissory notes totaling $119,000. In addition, the lenders required that the Dewsnups provide security for the loan. Therefore, the Dewsnups executed (1) a trust deed in favor of the lenders for the Dewsnups' 160–acre farm together with its water rights and 56.71 acres of land in Oak City, Utah (collectively, the trust deed property), (2) a document entitled "Assignment of Contract" assigning to the lenders the Dewsnups' interest in a real estate purchase contract, and (3) a document entitled "Security Agreement" securing the loan with certain water rights owned by the Dewsnups.

Through the "Assignment of Contract," the Dewsnups assigned any right, title, and interest they held in farmland adjacent to their farm (the Arrow property), which they held pursuant to a real estate purchase contract with Arrow Investment Company (the Arrow contract). The "assignment" was executed to provide additional security for the promissory notes and presumably would have been extinguished when the Dewsnups repaid the loan in full. Under the terms of the assignment, the Dewsnups were to continue making annual installment payments and paying taxes on the Arrow property pursuant to the terms of the Arrow contract, and in the event the Dewsnups defaulted on such payments, the lenders were authorized to make those payments.

On June 1, 1980, the Dewsnups defaulted on the $119,000 promissory notes. They also failed to pay the 1979 property taxes on the Arrow property and failed to make a January 2, 1980, annual installment payment pursuant to the Arrow contract. The lenders subsequently made the January 2, 1980, Arrow contract payment in the amount of $47,880.50 and paid the property taxes owing on the Arrow property in the amount of $2,085.71. Thereafter, the lenders asserted that the Dewsnups owed them $49,966.21 in addition to the $119,000 promissory notes.

On September 15, 1980, the lenders filed a complaint against the Dewsnups and other individuals with an interest in the Dewsnups' property, alleging that pursuant to the terms of the promissory notes, the Dewsnups were obligated to pay the principal and interest on the $119,000 loan on or before June 1, 1980, which the Dewsnups had failed to do. They further alleged that to protect their interest in the property securing the loan, it was necessary for the lenders to make the payments due under the Arrow contract in the total amount of $49,966.21 and that the Dewsnups additionally owed this amount plus interest. Accordingly, the lenders sought a judgment to determine defendants' respective rights and priorities in the Arrow property, which secured the promissory notes pursuant to the assignment of contract, and in the water rights which secured the promissory notes pursuant to the security agreement, and sought an order of sale on such property. The lenders additionally stated in their complaint that the "obligation herein sued upon" was secured by the trust deed and that the lenders would be conducting a trust deed sale on or after September 26, 1980. The complaint included a description of the properties (the Oak City property and the Dewsnups' farm and appurtenant water rights) that would be subject to the trust deed sale.

On November 21, 1980, the Dewsnups filed an answer admitting that they borrowed $119,000 from the lenders and that this money was due. They also admitted that the promissory notes were secured by the trust deed but alleged that the lenders were entitled to foreclose only on their 160–acre farm and appurtenant water rights, but not on the Oak City property, which they claimed they did not intend to include in the trust deed. However, the Dewsnups denied owing the lenders the $49,966.21 paid under the Arrow contract, alleging that they were coerced into assigning their interest under the Arrow contract and denying the validity of that assignment. In addition, they filed a counterclaim seeking to reform the trust deed to include only the 160–acre farm and water rights but not the Oak City property and to vacate the assignment of contract on the ground that their former attorneys breached their fidu-

ciary duty to fully disclose to them the contents of the documents involved in the loan transaction.

In December of 1980, while the lawsuit was pending, the Dewsnups paid the lenders the principal and interest due on the $119,000 loan. However, the lenders claimed that the Dewsnups still owed them $49,966.21 plus interest for the lenders' payments under the Arrow contract.

On March 3, 1981, the lenders moved for summary judgment against the Dewsnups. The lenders asserted that the Dewsnups were still indebted to them "in the sum of $49,966.21 in principal, plus interest, attorney's fees, and court costs, as a result of their breach of contract on promissory notes, securred [sic] by real property and water rights" and that there were no material issues of fact remaining and they were entitled to summary judgment as a matter of law.

On April 14, 1981, the trial court heard the motion for summary judgment. The Dewsnups failed to appear in court for the hearing on the motion. The trial court granted summary judgment in favor of the lenders on the basis of the unrebutted affidavit of Lewis Timm, trustee for two of the lenders. The court held that the Dewsnups owed the lenders $49,966.21 plus interest, together with $53.50 for court costs and $6,985 for the costs of collection, including attorney fees. The trial court additionally held that these amounts were secured by the "mortgage and security agreement ... as well as the trust deed property."[2] The trial court ordered that the Arrow property and the water rights described in the assignment of contract and security agreement respectively be sold at public auction.

On January 22, 1991,[3] the Dewsnups moved for reconsideration of the summary judgment on the grounds that (1) the Dewsnups were not contractually obligated to reimburse the lenders for their $49,966.21 payment under the Arrow contract because new evidence established that the Arrow contract had terminated prior to the lenders' payments under such contract, and (2) the $49,966.21 due under the Arrow contract was not secured by the trust deed as stated in the summary judgment.

The Dewsnups also moved to amend their counterclaim asserting new claims against the lenders and renewing the claims against their former attorneys. On February 21, 1991, the trial court issued an order denying both motions on the grounds that it had implicitly denied the counterclaim when it granted summary judgment in 1981 and that the summary judgment was final and appealable at that time.

In March of 1991, the Dewsnups appealed the denial of their motions to reconsider and to amend their counterclaim to this court. They argued that the summary judgment did not wholly dispose of the case and thus the summary judgment was subject to reconsideration. Further, they argued that the summary judgment did not wholly dispose of their counterclaim and that the trial court should have addressed the merits of their motion to amend the counterclaim.

In 1993, this court held that the trial court had erred in denying the Dewsnups' motions to reconsider and to amend their counterclaim. *Timm I*, 851 P.2d at 1182–84. We held that the summary judgment did not wholly dispose of the case and was therefore subject to revision, making a motion for reconsideration permissible. *Id.* at 1185. We further held that the summary judgment did not wholly dispose of the counterclaim and therefore part of the counterclaim remained in the trial court. *Id.* at 1182. We also held, however, that the summary judgment "implicitly and necessarily constituted an adverse ruling" on that part of the counterclaim which sought to vacate the assignment of

---

2. The "mortgage" referred to by the trial judge appears to be the "Assignment of Contract."

3. Mrs. Dewsnup's delay in bringing the motions was effectuated by interim bankruptcy proceedings. *In re Dewsnup*, 87 B.R. 676 (D.Utah 1988), *aff'd*, 908 F.2d 588 (10th Cir.1990), *aff'd, Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

contract as security for the promissory notes. *Id.* Therefore, we remanded to the trial court, directing it to address the merits of Mrs. Dewsnup's motion to reconsider the summary judgment as well as her motion to amend her counterclaim. *Id.* at 1182, 1185.

On remand, Mrs. Dewsnup again argued that the summary judgment should be reconsidered because (1) the Dewsnups were not contractually obligated to reimburse the lenders for their $49,966.21 payment under the Arrow contract because new evidence established that the Arrow contract had terminated prior to the lenders' payments under such contract, and (2) the $49,966.21 due under the Arrow contract was not secured by the trust deed as stated in the summary judgment. Further, Mrs. Dewsnup argued that she should be able to amend her counterclaim on the basis of this court's liberal interpretation of rule 15(a) of the Utah Rules of Civil Procedure, which permits amendment with leave of the court and states that "leave shall be freely given when justice so requires."

The trial court denied Mrs. Dewsnup's motion to reconsider the summary judgment, stating that there were no facts before the court to justify reconsideration of the summary judgment. The trial court also denied Mrs. Dewsnup's motion to amend her counterclaim, stating that it was based on erroneous assumptions and would result in prejudice against the lenders. The court also held that the amendment allowing Mrs. Dewsnup to name Joseph Henriod as an individual party to the litigation would result in prejudice because twelve years had elapsed since the case was filed.

Further, the trial court denied Mrs. Dewsnup's request for a jury trial and dismissed the Dewsnups' original counterclaim. The trial court found that the reformation of the trust deed sought by the counterclaim would prejudice innocent parties and was not justified since the necessary elements of mis-

take or fraud were not shown. Moreover, the trial court concluded that the evidence in the case established that the Oak City property was "properly included and intended to be included" in the trust deed property. Finally, the trial court granted the lenders' request for relief from the lis pendens on the trust deed property which Mrs. Dewsnup had filed pending nonjudicial foreclosure of such property.[4]

This brings us to the present appeal. Mrs. Dewsnup asserts that on remand the trial court erred in (1) denying her motion to reconsider the summary judgment, (2) denying her motion to amend her counterclaim, (3) dismissing her original counterclaim, (4) granting the lenders' request for relief from the lis pendens, and (5) denying her jury demand on her counterclaim. We address each of these issues separately.

## I. MOTION TO RECONSIDER SUMMARY JUDGMENT

■ Mrs. Dewsnup argued on remand that the trial court should reconsider the summary judgment because (1) the Dewsnups were not contractually obligated to reimburse the lenders for their $49,966.21 payment under the Arrow contract inasmuch as new evidence established that the Arrow contract had terminated prior to the lenders' payments under such contract, and (2) any obligation the Dewsnups had to repay the lenders for the $49,966.21 incurred under the Arrow contract was not secured by the trust deed property, as stated in the summary judgment. The trial court denied Mrs. Dewsnup's motion to reconsider, stating that there were no facts before the court to justify reconsideration of the summary judgment.

■ A trial court's decision to grant or deny a *motion to reconsider* summary judgment is within the discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion. *Accord Trembly*

---

4. It cannot be determined from the record if and when the lenders conducted a sale on the proper-

ty subject to the trust deed.

*v. Mrs. Fields Cookies*, 884 P.2d 1306, 1312 (Utah Ct.App.1994); *cf. Gillmor v. Wright*, 850 P.2d 431, 434 (Utah 1993) (" 'A motion or action to modify a final judgment is addressed to the discretion of the trial court....' " (quoting *Laub v. South Central Utah Tel. Ass'n*, 657 P.2d 1304, 1306 (Utah 1982))).

Mrs. Dewsnup first argues that the Dewsnups were not contractually obligated to reimburse the lenders for their $49,966.21 payment under the Arrow contract because new evidence established that the Arrow contract had terminated prior to the lenders' payments under such contract. Mrs. Dewsnup argues that contrary to the evidence before the trial court at the time of summary judgment, the lenders' demand for reimbursement states that the lenders' payments under the Arrow contract were made on June 7, 1980, not on June 2, 1980. The effect of this fact, Mrs. Dewsnup argues, is that the Dewsnups were not obligated to repay the lenders for the amounts paid under the Arrow contract because their interest in the Arrow contract had terminated. The terms of the Arrow contract provided that if payment was due for a period of five months, "[b]uyers shall forfeit any and all right, title and interest that they otherwise would have in and to the property covered by this agreement ... and this agreement shall terminate." When the Dewsnups failed to make the January 2, 1980, installment payment, they defaulted on their obligations under the Arrow contract. Pursuant to the terms of that contract, the Dewsnups' interest in the contract would terminate five months later, on June 2, 1980. Accordingly, Mrs. Dewsnup contends, because the lenders did not make the payment on the Arrow contract until June 7, 1980, the Dewsnups' interest in the contract had terminated. Therefore, Mrs. Dewsnup asserts that she and her husband were not obligated to repay the lenders for the $49,966.21 paid under the Arrow contract.

However, the lenders submitted to the trial court Joseph Henriod's affidavit averring that the lenders' demand for reimbursement contained a typographical error regarding the date on which payment was made. While the letter stated that payment was made on June 7, 1980, Henriod stated that payment was actually made on June 2, 1980, and accompanied his affidavit with a receipt dated June 2, 1980 from Valley Bank and Trust Co. in the amount of $47,880.50 to Arrow Investment Co. Further, the initial summary judgment motion was granted on the basis of Louis Timm's unrebutted affidavit averring that payment was made on June 2, 1980. Ordinarily, countering affidavits would create a question of fact. In this case, however, while Mrs. Dewsnup alleged that the lenders' payment was made on June 7, 1980, this allegation was overwhelmingly rebutted by the lenders' countering affidavits, including the receipt from the bank dated June 2, 1980. Mrs. Dewsnup did not offer evidence to rebut the lenders' affidavits. Because the lenders' countering affidavits were unrebutted, a finding of no material issue of fact was required. Accordingly, we hold that the trial court did not abuse its discretion in finding that the new evidence proffered by Mrs. Dewsnup did not justify reconsideration of the summary judgment.

Mrs. Dewsnup next argues that the trial court should have granted her motion to reconsider because the $49,966.21 the lenders paid under the Arrow contract was not secured by the trust deed as stated in the summary judgment and therefore any foreclosure of the trust deed would be in error. The lenders counter that the trial court did not order foreclosure on the trust deed property, but only on the Arrow property assigned under the assignment of the Arrow contract, and the water rights specified by the security agreement and therefore Mrs. Dewsnup's argument is nonsensical.

However, the summary judgment did in fact state that the $49,966.21 owed under the Arrow contract plus interest, together with $53.50 for court costs and $6,985 for the costs of collection, was *secured* by the "mortgage and security agreement ... *as well as the trust deed property*." (Emphasis added.) An examination of the "Assignment of Con-

tract" reveals that the Dewsnups were obligated to repay the lenders the $49,966.21 paid under the Arrow contract. However, this debt was not secured by the trust deed, the Arrow property, or the water rights specified in the security agreement. Such properties secured only the $119,000 debt on the promissory notes. Therefore, the trial court's legal conclusion that the $49,966.21 was *secured* by the "mortgage and security agreement . . . as well as the trust deed property" was in error. Moreover, judicial foreclosure on the Arrow property and the water rights pursuant to the summary judgment would be warranted only if the Dewsnups owed money on the promissory notes. However, it cannot be determined from the record whether the trial court held as a matter of law that the Dewsnups still owed money on the promissory notes, excluding the amounts due in conjunction with the lenders' $49,966.21 payment under the Arrow contract, thereby justifying the summary judgment despite the trial court's legal error. *See* Utah R.Civ.P. 61; *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796–97 (Utah 1991) (examining record to determine whether error was harmful). Therefore, we hold that the trial court abused its discretion in denying Mrs. Dewsnup's motion to reconsider the summary judgment due to the trial court's legal error in concluding that the $49,966.21 owed under the Arrow contract was secured by the "mortgage and security agreement . . . as well as the trust deed property." Accordingly, we remand and direct the trial court to grant Mrs. Dewsnup's motion to reconsider the summary judgment and to determine whether costs and fees were outstanding on the promissory notes at the time of the summary judgment.

## II. MOTION TO AMEND COUNTERCLAIM

We next address whether the trial court abused its discretion in denying Mrs. Dewsnup's motion to amend her counterclaim. The Dewsnups' original counterclaim sought to reform the trust deed to exclude the Oak City property and to vacate the assignment of the Arrow contract on the alleged basis that their personal attorneys Joseph Henriod and Earl Peck had breached their fiduciary duty to the Dewsnups by failing to fully disclose to them the nature and content of the said documents. Henriod was not personally made a party to the action but only participated as a plaintiff in his capacity as trustee for the Annette Jacob Trust. Peck was neither an individual party to the lawsuit nor a trustee for one of the lenders.

The proposed amended counterclaim added allegations that the lenders failed to reconvey the trust deed property after the promissory notes had been paid in full on the ground that the trust deed also secured the $49,966.21 due under the Arrow contract. The proposed amended counterclaim also sought to exclude the Oak City property from the trust deed and to vacate the assignment of contract, alleging that the trust deed and assignment of contract did not conform to the agreements between the parties. Further, the proposed amended counterclaim renewed allegations that their former attorneys Henriod and Peck had violated their fiduciary duty to the Dewsnups in failing to fully disclose the nature and content of the loan documents. As a result, the proposed amended counterclaim sought monetary damages against both the lenders and Henriod and Peck, reconveyance of the trust deed property, reformation of the trust deed to exclude the Oak City property, and vacation of the assignment of the Arrow contract.

The trial court denied Mrs. Dewsnup's motion to amend her counterclaim, specifying the following as grounds for its order:

(a) The Defendants' Motion to Amend the Counterclaim are [sic] based on erroneous assumptions and would result in prejudice against the Plaintiffs.

(b) The amendment allowing Defendants to name Mr. Henriod as a party would result in prejudice in his defense due to the fact it has been twelve years since the case has been filed.

(c) The second amendment allowing the Defendant to reform the assignment of the

Arrow Contract has already been decided in favor of the Plaintiffs, therefore there is no need for the Court to allow this amendment.

(d) The Court finds that the Defendant's amendments to the counterclaim involving the termination of the Arrow Contract and the assertion that the Plaintiff's [sic] have been paid in full are erroneous and should not be allowed.

Mrs. Dewsnup argues on appeal that her motion to amend her counterclaim should have been granted because (1) any delay in the case was due to bankruptcy proceedings, (2) the parties would have ample time to respond, and (3) the trial court's denial of her motion to amend the counterclaim seemed to be based on the merits of the proposed counterclaim itself instead of on appropriate grounds for denying the motion.

The lenders argue, on the other hand, that the claims against them should fail because the Dewsnups had not repaid the loan in full inasmuch as costs and attorney fees on the promissory notes were outstanding when the summary judgment was granted. Second, the lenders argue that Mr. Henriod was not named individually as a party in the lawsuit but only as a trustee of the Annette Jacob Trust and therefore any counterclaim against him was brought in his capacity as trustee. Third, even if Mrs. Dewsnup had filed a third-party complaint to make allegations against Mr. Henriod individually, this amendment would not relate back to the original proceedings and would still be time barred and greatly prejudicial. Finally, contrary to Mrs. Dewsnup's assertion that the trial judge improperly ruled on the merits of the amendments rather than on the motion itself, the lenders argue that the trial judge properly ruled on the undisputed evidence before it.

■ "A motion to amend a pleading is addressed to the discretion of the trial court." *Timm I,* 851 P.2d at 1182. Rule 15(a) of the Utah Rules of Civil Procedure permits amendments with leave of the court and states that "leave shall be freely given when justice so requires." "A primary consideration that a trial judge must take into account in determining whether leave should be granted is whether the opposing side would be put to unavoidable prejudice by having an issue adjudicated for which he had not time to prepare." *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 464 (Utah 1983). Further, a motion to amend should not be granted where the pleader does not set forth a legally sufficient claim. *See* Utah R.Civ.P. 8(a) (pleading must contain "short and plain statement of the claim showing that the pleader is entitled to relief").

■ First, we consider whether the trial court abused its discretion in denying Mrs. Dewsnup's motion to amend her counterclaim against the lenders. Mrs. Dewsnup's proposed amended counterclaim against the lenders asserts that the Dewsnups paid the full amount due on the promissory notes and seeks reconveyance of the trust deed securing the promissory notes and monetary damages from the lenders for failure to do so. The lenders allege that the promissory notes were not paid in full because attorney fees and costs were still outstanding on the promissory notes as a result of the Dewsnups' default on such payment. Whether the lenders had an obligation to reconvey the trust deed would depend on whether any amount was still outstanding on the promissory notes after the Dewsnups paid the principal and interest on the loan. If outstanding amounts, including attorney fees and costs, were still due on the notes, reconveyance would not be warranted. But if no outstanding amounts were due on the notes which the trust deed secured, the trust deed should have been reconveyed to Mrs. Dewsnup.

The trial court denied Mrs. Dewsnup's motion to amend her counterclaim against the lenders, finding, "The Defendants' Motion to Amend the Counterclaim are [sic] based on *erroneous* assumptions and would result in prejudice against the Plaintiffs," and "the Defendant's amendments to the counterclaim involving the termination of the Arrow Contract and the assertion that Plaintiff's have

been paid in full are *erroneous* and should not be allowed." (Emphasis added.)

In stating that the Dewsnups' claims are based on "erroneous assumptions" and that Mrs. Dewsnup's assertion that they paid back the lenders in full is "erroneous," the trial court improperly denied Mrs. Dewsnup's motion to amend on the basis of the underlying evidence. Indeed, the trial court may determine on remand that Mrs. Dewsnup had not, in fact, repaid the lenders in full for the amounts, including attorney fees and costs, due on the promissory notes. However, the trial court may not make such a determination as the basis upon which to deny Mrs. Dewsnup's motion to amend. Accordingly, we hold that the trial court abused its discretion in denying Mrs. Dewsnup's motion to amend her counterclaim with respect to these claims and direct the trial court on remand to allow Mrs. Dewsnup to amend her counterclaim against the lenders.

■ Next, we consider whether the trial court abused its discretion in denying Mrs. Dewsnup's motion to amend her counterclaim against Henriod and Peck, raising essentially identical allegations as those in her original counterclaim. Henriod was a plaintiff in the original action against the Dewsnups *only* in his capacity as trustee for the Annette Jacob Trust, one of the lenders. While the Dewsnups may have counterclaims against him in that capacity, they could not counterclaim against him personally. Any claim they had against him personally would require a new complaint or a third-party complaint. The Dewsnups' allegation that Henriod breached his fiduciary duty to them is based on the Dewsnups' assertion that Henriod acted as their attorney in the transaction and was therefore improperly brought against him by way of a counterclaim. Likewise, the allegations in the Dewsnups' counterclaim against Peck cannot be sustained because he was not an individual party to the lawsuit. Therefore, we hold that the trial court did not abuse its discretion in denying Mrs. Dewsnup's motion to amend her counterclaim renewing her claims against Henriod and Peck personally.

■ Mrs. Dewsnup's proposed amended counterclaim also alleges that the Dewsnups did not intend to assign their interest in the Arrow property and thus seeks reformation to exclude the assignment of contract as security for the loan. The trial court denied her motion to amend with respect to this claim, stating, "The second amendment allowing the Defendant to reform the assignment of the Arrow Contract has already been decided in favor of the Plaintiffs, therefore there is no need for the Court to allow this amendment." In *Timm I*, we determined that "the grant of summary judgment implicitly and necessarily constituted an adverse ruling on that part of the counterclaim that sought reformation to exclude the Arrow contract as security in the loan transaction." 851 P.2d at 1182. Accordingly, the trial court did not abuse its discretion in denying Mrs. Dewsnup's motion to amend with respect to this claim.

Finally, Mrs. Dewsnup's proposed amended counterclaim sought reformation of the trust deed to exclude the Oak City property, alleging that the Oak City property was included "contrary to the agreement between the parties."

■ In *Bown v. Loveland,* 678 P.2d 292, 295 (Utah 1984), we stated, "To reform a written warranty deed or any written instrument, the plaintiff must show mutual mistake of the parties or mistake on the part of one and fraud or inequitable conduct on the part of the other, as a result of which the instrument reflects something neither party had intended or agreed to." Further, rule 9(b) of the Utah Rules of Civil Procedure requires, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Mrs. Dewsnup, however, merely claims that the Oak City property was included *contrary to the parties' agreement.* Even if this claim could be construed as an allegation of fraud or mistake, the allegation is not stated with particularity. We therefore hold that the proposed amended counterclaim to reform the trust deed to exclude the Oak City prop-

erty is not legally sufficient. Accordingly, we affirm the trial court's dismissal of Mrs. Dewsnup's motion to amend with respect to this claim.

In summary, we reverse the trial court's denial of Mrs. Dewsnup's motion to amend her counterclaim with respect to those claims brought against the lenders and direct the trial court on remand to grant Mrs. Dewsnup's motion to amend her counterclaim against the lenders. We affirm the trial court's denial of Mrs. Dewsnup's motion to amend her counterclaim asserting claims against Henriod and Peck and seeking reformation of the trust deed to exclude the Oak City property and to vacate the assignment of contract.

## III. DISMISSAL OF COUNTERCLAIM

 Mrs. Dewsnup next appeals the trial court's dismissal of her original counterclaim. Mrs. Dewsnup's original counterclaim sought to reform the trust deed to exclude the Oak City property and to vacate the assignment of the Arrow contract on the alleged basis that the Dewsnups' personal attorneys Joseph Henriod and Earl Peck had breached their fiduciary duty to the Dewsnups in their failure to fully disclose to them the nature and content of the loan documents.

The parties submitted to a decision of the counterclaim on the basis of the parties' written briefs and affidavits, "waiv[ing] any due process challenge to this method of resolution." In effect, the parties submitted to an evidentiary trial on the basis of the evidence in the memoranda and affidavits without further oral argument. In her memoranda, Mrs. Dewsnup argued that the trust deed should be reformed to exclude the Oak City property on the alleged basis that Joseph Henriod violated attorney disciplinary rules by improperly entering a business transaction with his client and by improperly continuing multiple representations. Mrs. Dewsnup submitted to the trial court her affidavit stating that she was not aware that the trust deed included the Oak City property and that, in fact, it was her understanding

that the trust deed did not contain the Oak City property when she signed the trust deed.

The lenders argued that the Dewsnups' original counterclaim requesting reformation of the trust deed should be dismissed because no ground for relief existed under the theory of breach of fiduciary duty by Joseph Henriod. Further, the lenders argued that Henriod was not an individual party to the litigation and that Henriod did not violate the attorney disciplinary rules or otherwise breach a fiduciary duty to the Dewsnups. In support of their argument, the lenders submitted portions of the transcript from Earl Peck's deposition stating that it was his understanding that the Oak City property was to be included in the trust deed and submitted a copy of Peck's handwritten notes made contemporaneously with the parties' discussions on the content of the trust deed which made reference to "Aletha [Dewsnup's] 60 acres." The notes had been included as an exhibit in Peck's deposition.

The trial court dismissed the counterclaim, finding, among other things, "Reformation of the trust deed is not justified since the necessary elements of mistake or fraud on the part of the parties has not been shown" and "[t]he evidence in the case establishes that the Oak City property was properly included and intended to be included in the transaction."

 The trial court's dismissal of the counterclaim involved both factual and legal determinations. We review the trial court's factual findings for clear error. *Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1286 (Utah 1993). We review the trial court's legal conclusions for correctness, according no deference to the trial court. *United Park City Mines Co. v. Greater Park City Co.,* 870 P.2d 880, 885 (Utah 1993). In addition, an appellant must properly marshal the evidence to permit review of the trial court's findings. *Alta Indus. Ltd,* 846 P.2d at 1286.

 As we discussed above with respect to Mrs. Dewsnup's motion to amend her counterclaim, a plaintiff must allege mis-

take or fraud to seek reformation of a written document. *Bown*, 678 P.2d at 295 ("To reform a written warranty deed or any written instrument, the plaintiff must show mutual mistake of the parties or mistake on the part of one and fraud or inequitable conduct on the part of the other, as a result of which the instrument reflects something neither party had intended or agreed to."). Further, where the document is unambiguous on its face, the challenging party must present proof of mistake by clear and convincing evidence. *Id.*

In this case, the Dewsnups' counterclaim does not allege mistake or fraud on the part of the lenders but rather that the trust deed should be reformed to exclude the Oak City property on the basis that Henriod and Peck breached their fiduciary duty to the Dewsnups. Even if the allegation of the attorneys' breach was enough to establish fraud or inequitable conduct, the trial court found, "The evidence in the case establishes that the Oak City property was properly included and intended to be included in the transaction." Mrs. Dewsnup fails to marshal the evidence to prove that this finding was clearly erroneous, and therefore, we assume the record supports this finding. *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991). Accordingly, Mrs. Dewsnup has failed to establish that the trust deed should be reformed.

For the foregoing reasons, we affirm the trial court's dismissal of the Dewsnups' original counterclaim.[5]

## IV. LIS PENDENS

■■■ We now address whether the trial court erred in releasing the lis pendens on the trust deed property. The recording of a lis pendens provides constructive notice to all persons that the rights and interests in the

property at issue are controverted. One who purchases property subject to a lis pendens acquires only the grantor's interest therein, as determined by the outcome of the litigation. *Hidden Meadows Dev. Co. v. Mills*, 590 P.2d 1244, 1248 (Utah 1979); *accord Blodgett v. Zions First Nat'l Bank*, 752 P.2d 901, 906 (Utah Ct.App.1988). Whether a court may grant a party's requested relief from a lis pendens is a question of law which an appellate court reviews for correctness, according no deference to the trial court. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

■■■ In this case, Mrs. Dewsnup personally delivered a lis pendens on the trust deed property to the Millard County recorder on April 29, 1994, the day the lenders had scheduled a trustee's sale on the trust deed property.[6] The lis pendens was recorded that same day. On May 4, 1994, a second lis pendens was recorded on the trust deed property which had been mailed to the county recorder by Mrs. Dewsnup's attorney. The lenders did not discover the lis pendens until July of 1994 and, in November of 1994, moved the trial court to release the lis pendens. In January of 1995, the trial court granted the lenders' motion, finding that the evidence before it supported the requested relief from the lis pendens. There is no indication in the record that Mrs. Dewsnup sought to stay the court's order releasing the lis pendens, nor do the parties' briefs assert otherwise.

The lenders argue on appeal that the trust deed property was not the subject of the litigation and therefore the trial court correctly released the lis pendens on the property. Mrs. Dewsnup argues that the trust deed property is affected by the outcome of this litigation and therefore the lis pendens should not have been released.

---

5. Accordingly, we need not address whether the trial court's denial of Mrs. Dewsnup's jury demand on her counterclaim was in error. However, if Mrs. Dewsnup were to request a jury trial on her amended counterclaim within ten days of the issuance of this opinion, pursuant to rule 38 of the Utah Rules of Civil Procedure, the trial court should grant such request.

6. As we previously noted, it cannot be determined from the record if and when the lenders conducted a sale on the property subject to the trust deed.

As we have previously . discussed, Mrs. Dewsnup's proposed amended counterclaim against the lenders involves a determination of whether the Dewsnups had paid all amounts due under the promissory notes. If the trial court finds on remand that they had paid the amounts owed on the promissory notes in full, then the lenders' foreclosure on the Dewsnups' property, including the trust deed property, would be in error. Thus, Mrs. Dewsnup's interest in the trust deed property is subject to the outcome of this case. We therefore hold that the trial court erred in releasing the lis pendens from the trust deed property.

■ We next consider what remedy Mrs. Dewsnup is afforded as a result of the trial court's error. We determined above that Mrs. Dewsnup's proposed amended counterclaim against the lenders should be allowed to proceed. The proposed amended counterclaim seeks both damages and specific performance via reconveyance of the trust deed property. However, in the event that Mrs. Dewsnup prevails on her amended counterclaim against the lenders, the possibility of reconveyance of the trust deed property depends on whether such property was sold to a bona fide purchaser [7] or whether the property was sold to one who had actual or constructive notice of the pending litigation.

In *Hidden Meadows,* 590 P.2d at 1248, this court held that an unreleased lis pendens remains in effect pending appeal, and a party's failure to furnish a supersedeas bond did not affect the lis pendens. However, in the instant case, the lis pendens in question was released by the trial court prior to appeal and Mrs. Dewsnup did not move to stay the trial court's order as provided for under rule 62(d) of the Utah Rules of Civil Procedure

and rule 8(a) of the Utah Rules of Appellate Procedure.[8] Thus, if the trust deed property was sold to a bona fide purchaser subsequent to the release of the lis pendens, reconveyance of the trust deed property would no longer be available to Mrs. Dewsnup.

However, reconveyance would be available if the trust deed property were purchased at a trustee's sale subsequent to the recording of the lis pendens but prior to the trial court's release of the lis pendens. In that instance, such purchaser would have constructive notice of the litigation. Even if the property were purchased subsequent to the trial court's release of the lis pendens, such purchaser may have had actual notice of the pending litigation. Such purchaser would be in the same position as one who had constructive notice of the litigation subject to a lis pendens. *Tuft v. Federal Leasing,* 657 P.2d 1300, 1302–03 (Utah 1982). However, the determination of whether the trust deed property was sold to a bona fide purchaser or to one with actual or constructive notice of the litigation involves questions of fact which must be determined by the trial court on remand.

In sum, we reinstate the lis pendens on any unsold property which was the subject of the trust deed. In the event Mrs. Dewsnup prevails on her amended counterclaim against the lenders, the trial court shall determine on remand whether the trust deed property was sold to a bona fide purchaser or a purchaser with actual or constructive notice of the pending litigation and thus whether specific performance in the reconveyance of the trust deed property is available to Mrs. Dewsnup.

## CONCLUSION

In conclusion, we reverse the trial court's denial of Mrs. Dewsnup's motion to reconsid-

---

**7.** "A bona fide purchaser is one who pays valuable consideration for a conveyance, acts in good faith, and takes without notice of an adverse claim or others' outstanding rights to the seller's title." *Baldwin v. Burton,* 850 P.2d 1188, 1197 (Utah 1993); Utah Code Ann. § 70A–8–302 (defining "bona fide purchaser").

**8.** Rule 62(d) of the Utah Rules of Civil Procedure provides that an appellant may obtain a stay of

proceedings upon appeal by giving a supersedeas bond after filing notice of appeal with the trial court. If application for stay with the trial court is not granted or practicable or does not afford the party the requested relief, the appellant may move for such relief with the appellate court pursuant to rule 8(a) of the Utah Rules of Appellate Procedure.

er summary judgment and remand to the trial court to grant Mrs. Dewsnup's motion to reconsider and determine what amount, if any, remained outstanding on the promissory notes. We reverse the denial of her motion to amend her counterclaim asserting new claims against the lenders but affirm the trial court's dismissal of her motion to amend renewing her claims against Henriod and Peck and seeking reformation of the trust deed to exclude the Oak City property and to vacate the assignment of contract. We affirm the dismissal of the Dewsnups' original counterclaim and therefore do not address whether the trial court erred in dismissing Mrs. Dewsnup's jury demand thereon. Finally, we reverse the trial court's removal of the lis pendens on the trust deed property. In the event that Mrs. Dewsnup prevails on her proposed amended counterclaim against the lenders, in addition to damages, she may be entitled to specific performance in the reconveyance of the trust deed. Thus, if necessary, the trial court shall determine on remand whether the trust deed property was sold to a bona fide purchaser or to a purchaser with actual or constructive notice of the pending litigation and the scope of the damages to which Mrs. Dewsnup is entitled. We also reiterate that Mrs. Dewsnup shall be granted a jury trial on her amended counterclaim if she so demands within ten days of the issuance of this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.