1999 UT 105

**Louis L. TIMM, John Neiuwland, and Floyd M. Childs, et al., Plaintiffs and Appellants,**

v.

**T. Lamar DEWSNUP and Aletha Dewsnup, Defendants and Appellees.**

No. 980147.

Supreme Court of Utah.

Nov. 12, 1999.

Michael Z. Hayes, Todd J. Godfrey, Salt Lake City, for plaintiffs.

Russell A. Cline, Salt Lake City, for defendants.

HOWE, Chief Justice:

¶ 1 This case is before us for the third time. We restate only those facts which are pertinent to the issues raised on this appeal. For a complete statement of facts, we refer the reader to our previous opinions, *Timm v. Dewsnup*, 851 P.2d 1178 (Utah 1993) (*Timm I* ), and *Timm v. Dewsnup*, 921 P.2d 1381 (Utah 1996) (*Timm II* ).

¶ 2 In June of 1978, defendant Aletha Dewsnup and her husband, now deceased, executed three promissory notes totaling $119,000 to the plaintiffs. The notes were secured by a trust deed in favor of the lenders on the 160–acre Dewsnup farm, together with its water rights, and on 56.7 acres of land in Oak City, Utah (collectively the "trust deed property"). Additionally, the notes were secured by an assignment of a contract wherein the Dewsnups were purchasing certain other real property in Millard County ("the Arrow contract").

¶ 3 On January 2, 1980, the Dewsnups failed to make an annual installment payment due under the Arrow contract; they also failed to pay the 1979 property taxes on the Arrow property. The lenders subsequently made the delinquent installment payment in the sum of $47,880.50 and paid the property taxes in the amount of $2,085.71 pursuant to that right given them in the assignment of contract to protect their security. Thereafter, the lenders asserted that the Dewsnups owed them $49,966.21 in addition to the $119,000 in promissory notes. On June 1, 1980, the Dewsnups defaulted on the promissory notes.

¶ 4 On September 15, 1980, the lenders filed this action against the Dewsnups and other individuals with an interest in the Dewsnups' property seeking a judgment on the promissory notes and to determine the Dewsnups' respective rights and priorities in the Arrow property and for an order of sale of that property. In December of 1980, while this action was pending, the Dewsnups paid the lenders the principal and interest due on the $119,000 notes. On April 14, 1981, the trial court granted summary judgment in favor of the lenders for $49,966.21, plus interest, together with $53.50 for court costs and $6,985 for collection costs, including attorney fees. The trial court additionally held that these amounts were secured by the assignment of contract and by the trust deed property.

¶ 5 The Dewsnups then sought relief in bankruptcy proceedings which consumed about ten years' time. Finally, on January 22, 1991, after Mr. Dewsnup's death, Mrs. Dewsnup moved to reconsider the April 1981 summary judgment on two grounds, one of which was that the $49,966.21 due under the Arrow contract was not secured by the trust deed as recited in the summary judgment. She also moved to amend a counterclaim she and her husband had filed to assert new claims against the lenders and to renew claims against their former attorneys. The trial court denied both motions. On appeal to this court, we remanded the case to the trial court directing it to address the merits of Dewsnup's motion to reconsider the summary judgment and her motion to amend her counterclaim. *See Timm I.*

¶ 6 On remand, Dewsnup again contended that the summary judgment should be reconsidered because the $49,966.21 due under the Arrow contract was not secured by the trust deed as erroneously recited in the summary judgment. Dewsnup further asserted that she should be allowed to amend her counterclaim on the basis of this court's liberal interpretation of Utah Rule of Civil Procedure 15(a). The trial court again denied both motions.

¶ 7 On a second appeal to this court, we held that the trial court erred in concluding that the $49,966.21 was secured by the trust deed. We held that the trust deed property secured payment only of the $119,000 promissory notes. We remanded the case to the trial court to grant Dewsnup's motion to reconsider the summary judgment and to determine "what amount, if any, remained outstanding on the promissory notes." *Timm II*, 921 P.2d at 1394. We also reversed the denial of Dewsnup's motion to amend her counterclaim to assert new claims against the lenders. *Id.*

¶ 8 In *Timm II*, we noted that "it cannot be determined from the record if and when the lenders conducted a sale on the property

subject to the trust deed." 921 P.2d at 1386 n. 4, 1392 n. 6. Consequently, we stated that in the event Dewsnup prevails on her amended counterclaim against the lenders for damages or for reconveyance of the trust deed property, the possibility of reconveyance depends upon whether such property was sold to a bona fide purchaser or whether the property was sold to one who had actual or constructive notice of the pending litigation. We held that the determination of whether the trust deed property was sold to a bona fide purchaser, or to a purchaser with actual or constructive notice of the litigation, involved questions of fact which must be determined upon remand.

¶ 9 In fact, the lenders had conducted a nonjudicial foreclosure sale of the trust deed property on April 29, 1994, while the parties were litigating what amounts were secured by the trust deed. According to the lenders' answers to Dewsnup's interrogatories, the foreclosure sale was to recover $222,814.62 Dewsnup allegedly owed them. The lenders broke down that amount as follows:

1. $166,835.56, composed of the $49,-966.21 payment made by the lenders on the Arrow contract, plus $116,869.35 in post judgment interest thereon.

2. $43,545.30 in costs and attorney fees incurred between March 1987 and April 21, 1994.

3. $12,433.30 composed of $6,985.00 in costs and attorney fees awarded in the summary judgment, plus $5,448.30 in post judgment interest thereon.

At the foreclosure sale, the lenders purchased the trust deed property by bidding $115,000 of the $222,814.62 which they claimed Dewsnup owed them.

¶ 10 On remand, pursuant to this court's direction in *Timm II*, the trial court set aside the summary judgment except for the Arrow advance in the sum of $49,996.21, but deleted all language in the summary judgment that indicated that the trust deed property secured that amount. The trial court granted Dewsnup's amended motion for leave to file an amended counterclaim, which included claims against the lenders for wrongful foreclosure, failure to reconvey the trust deed, breach of the implied covenant of good faith

and fair dealing, infliction of emotional distress, and punitive damages. The lenders responded by moving for judgment on the pleadings or, in the alternative, summary judgment contending that it was undisputed that at least $5,000 in attorney fees were due and owing on the promissory notes and were not paid as of December 5, 1980, when all principal and interest on the notes were paid in full. Dewsnup opposed that motion asserting that either no amount was owing on attorney fees for collection of the notes or, if any amount was owing, it was a lesser amount than the $5,000 the lender claimed. Dewsnup also moved for partial summary judgment on her counterclaim for wrongful foreclosure, asserting that the nonjudicial trustee sale held on April 29, 1994, was barred by both the one action rule and barred by the statute of limitations, that the foreclosure on the trust deed was for debt not secured by the trust deed, and that the sale was procedurally defective because the notice of default and the notice of sale were not mailed to Dewsnup as required by statute.

¶ 11 The trial court granted the lenders' motion for judgment on the pleadings or, in the alternative, for summary judgment. Additionally, the trial court denied Dewsnup's motion for partial summary judgment and dismissed her counterclaim. Dewsnup again appeals, contending that the trial court erred in granting the lenders' motion for judgment on the pleadings or, in the alternative, for summary judgment, and in denying her motion for partial summary judgment.

¶ 12 The rulings of the trial court appear to be predicated upon the court's finding that there was no genuine dispute that Dewsnup had failed to pay the attorney fees incurred in collecting the $119,000 in promissory notes and that there was no competent evidence that any valid tender of payment of the fees had ever been made. However, the trial court made no finding as to the amount of the fees Dewsnup still owed. The trial court thereby failed to follow our directions when we remanded the case in *Timm II*. In that case we wrote, "In conclusion, we reverse the trial court's denial of Mrs. Dewsnup's motion to reconsider sum-

mary judgment and remand to the trial court to grant Mrs. Dewsnup's motion to reconsider and determine *what amount, if any*, remained outstanding on the promissory notes." 921 P.2d at 1394 (emphasis added). We directed that determination to be made because it was only for that amount that the nonjudicial foreclosure sale could be held. The trust deed property secured only payment of the three promissory notes totaling $119,000. It is undisputed that the principal and interest of the notes were paid in full in December 1980. Only the amount, if any, owing for attorney fees incurred in the collection of the notes would continue to be owing and would constitute a legal basis for holding a foreclosure sale on the trust deed property.

¶ 13 The foreclosure sale held on April 29, 1994, was for $222,814.62. That was obviously. an excessive amount; our decision in *Timm II* determined that the trust deed property did not secure repayment of the Arrow advances or attorney fees and court costs in connection with the collection of the Arrow advances. Additionally, a "trust property may be sold ... after a breach of an obligation for which the trust property is conveyed as security." Utah Code Ann. § 57–1–23. It cannot be sold for other amounts. Therefore, the trial court erred in not following the direction in our mandate and in granting the lenders' motion for judgment on the pleadings or, in the alternative, for summary judgment.

¶ 14 The lenders contend that because Dewsnup did not seek a stay of the nonjudicial foreclosure sale, she cannot now complain that the sale was held for an excessive amount. Upon receipt of the notice of sale, Dewsnup moved in the trial court to stay the sale. However, she did not call up her motion for hearing prior to the date of the sale. While it may be salutary to require a debtor to seek a stay of a trust deed sale where the lender has no notice of any error or defect claimed by the debtor, there is no reason for such a rule where the lender, as here, is actually in court litigating the amount owed by the debtor at the time of the sale. The lenders were on notice that Dewsnup contested the amount, secured by the trust deed, that they claimed she owed.

Before that issue was resolved, the lenders proceeded with the foreclosure sale for the full amount claimed by them which amount we found to be excessive in *Timm II*. While Dewsnup's failure to stay the sale may prevent her from recovering the property if it was sold to a bona fide purchaser, *see Timm II*, she may pursue her claim for damages. *See Richards v. Baum*, 914 P.2d 719 (Utah 1996).

¶ 15 We must therefore again remand this case to the trial court to determine what amount, if any, of attorney fees remained unpaid on the promissory notes when the sale was held. It was only for that amount that the foreclosure sale could have legally been held. For all amounts in excess of that amount, the sale was defective. Because any excess debt owing by Dewsnup was not secured by the trust deed property, it follows that the trial court erred in dismissing Dewsnup's counterclaim for wrongful foreclosure. We therefore reverse the summary judgment in favor of the lenders and the dismissal of Dewsnup's counterclaim and remand the case to the trial court to address the merits of Dewsnup's claim for the wrongful foreclosure of the trust deed property and the other claims and defenses alleged in the counterclaim.

¶ 16 Associate Chief Justice DURHAM, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE's opinion.