2003 UT 47

Louis L. TIMM, John Neiuwland, and Floyd M. Childs, trustees of United Precision Machine and Engineering Company Profit Sharing Trust; ABCO Insurance Agency, Inc., a Utah corporation; and Joseph L. Henriod, trustee for the Annette Jacob Trust, Plaintiffs and Appellants,

v.

T. Lamar DEWSNUP and Aletha Dewsnup; Arrow Investment Company, a limited partnership; the Federal Land Bank of Berkeley; Imperial Land Title, Inc., as trustee and Eugene L. Carson and Elaine Carson as beneficiaries; Stringham, Mazuran, Larsen & Sabin, a professional corporation; Mineral Fertilizer Company; and Harry V. Kaps, Defendants and Appellees.

No. 20010818.

Supreme Court of Utah.

Oct. 31, 2003.

Rehearing Denied Jan. 20, 2004.

**700**

Michael Z. Hayes, Todd J. Godfrey, Clark R. Nielsen, Salt Lake City, for plaintiffs.

Russell A. Cline, Salt Lake City, for defendants.

NEHRING, Justice:

¶ 1 Aletha Dewsnup and her late husband, T. Lamar Dewsnup, were farmers in Delta, Utah. In June 1978, they borrowed $119,000 to purchase a motel. The Dewsnups did not repay the loan on time and the three lenders, the Annette Jacob Trust Fund, United Precision Machine and Engineering Company Profit Sharing Trust,[1] and ABCO Insurance Agency, Inc., sued.

¶ 2 With this appeal, their lawsuit has made its way to this court for a fourth time. The lenders and the Dewsnups have also seen action on a second front, through a bankruptcy court action that finally ended in a ruling by the United States Supreme Court. Because of its length and breadth, this litigation has earned a place among a select, but not necessarily praiseworthy, group of indefatigable lawsuits in our state's jurisprudence, and therefore merits an introductory historical summary before we embark on addressing the issues raised in this appeal.

¶ 3 The Dewsnups executed one promissory note in favor of each lender, totaling $119,000. The notes came due on June 1, 1980. Each note was secured by the same collateral: (1) a trust deed on the Dewsnups' Delta farm, inclusive of water rights, and approximately fifty-six acres of land in Oak City, Utah, collectively called the "trust deed property;" (2) an assignment of the Dewsnups' interest in a contract by which the Dewsnups were purchasing additional land adjacent to their farm, referred to as "the Arrow contract;" and (3) a "security agreement" against certain water rights owned by the Dewsnups.

¶ 4 In January 1980, the Dewsnups failed to pay the annual installment on the Arrow contract, and later failed to pay taxes due on the Arrow contract property. Facing an impairment of their Arrow contract security, the lenders paid the delinquent $47,880.50 contract installment and $2,085.71 in past due taxes on June 7, 1980. On June 1, 1980, the Dewsnups defaulted on the promissory notes.

¶ 5 In September 1980, the lenders sued the Dewsnups seeking a judgment on the promissory notes, a determination of rights under the Arrow contract, and an order of sale of the Arrow property. The lenders also began a non-judicial foreclosure of the trust deed property. The Dewsnups answered and counterclaimed.

¶ 6 While the lawsuit and non-judicial foreclosure were pending, the Dewsnups sold the motel and, in December 1980, paid the lenders all principal and interest owing on the promissory notes. The Dewsnups then demanded reconveyance of the trust deed. The lenders refused, claiming that the Dewsnups were not entitled to a reconveyance until the Arrow contract advances were repaid.

¶ 7 In April 1981, the district court granted the lenders summary judgment against the Dewsnups for $49,966.21 (the total of payments made on the Arrow contract and back property taxes), plus interest, $53.50 in court costs, and $6,985 in collection costs. The court ordered that the Arrow property and water rights be sold at public auction.

¶ 8 With their judgment in hand, the lenders pursued foreclosure until blocked by a series of bankruptcy filings made by the Dewsnups, a process that began in April 1981 and did not end until January 1992.[2] Mr.

---

1. The named plaintiff in this action, Louis L. Timm, was the president of United Precision Machine and a trustee of its profit sharing trust.

2. *In re Dewsnup,* 87 B.R. 676 (Bankr.D.Utah 1988), *aff'd,* 908 F.2d 588 (10th Cir.1990), *aff'd, Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Dewsnup died in 1986. In August 1988, the lenders renewed their non-judicial foreclosure proceedings against the trust deed by filing a notice of default. In 1991, the bankruptcy trustee abandoned to Mrs. Dewsnup the counterclaim which the Dewsnups had filed in this action more than ten years earlier, and which the trustee had possessed as part of the Dewsnups' bankruptcy estate.

¶ 9 With her counterclaim revived, Mrs. Dewsnup moved the district court to reconsider the April 1981 summary judgment. She claimed that the trial court had improperly disregarded her counterclaim and her motion to amend it. She further challenged the district court's summary finding that the $49,966.21 due under the Arrow contract was secured by the trust deed property.

¶ 10 The district court rejected her contentions, but on appeal we reversed and remanded. We directed the district court to take up the merits of Mrs. Dewsnup's claim that the money paid to preserve the Arrow contract property did not secure the promissory notes. *Timm v. Dewsnup*, 851 P.2d 1178, 1185 (Utah 1993) (*Timm I*).

¶ 11 The district court undertook its tasks on remand and turned back Mrs. Dewsnup's counterclaim. Mrs. Dewsnup's second appeal to this court followed. We determined (1) that the Arrow contract was not secured by the trust deed, (2) that Mrs. Dewsnup should be permitted to amend her counterclaim to assert that the lenders had unlawfully refused to reconvey the trust deed, and (3) that the district court erred in removing the lis pendens which Mrs. Dewsnup had recorded on the trust deed property. Our remand also instructed the district court to determine "what amount, if any, remained outstanding on the promissory notes." *Timm v. Dewsnup*, 921 P.2d 1381, 1394 (Utah 1996) (*Timm II*).

¶ 12 On April 29, 1994, while the parties were engaged in litigating the issues raised in *Timm II*, the lenders conducted a non-judicial foreclosure sale of the trust deed property. This sale was not brought to our attention in *Timm II*. In our opinion, we twice observed that·"it cannot be determined from the record if and when the lenders conducted a sale on the property subject to the trust deed." *Id.* at n. 4, n. 6. The lenders asserted that the foreclosure sale was for recovery of the original amounts awarded in the April 1981 summary judgment, plus post-judgment interest, a sum by then claimed to have increased to $222,814.62. At the sale, the lenders purchased the trust deed property, bidding $115,000 of the $222,814.62 of debt.

¶ 13 On remand from *Timm II*, the district court granted summary judgment on the lenders' claim that at least $5,000 in attorney fees were due and owing on the promissory notes as of December 5, 1980, the date when the Dewsnups paid off all principal and interest. The ruling that attorney fees were owed on the promissory notes was particularly significant because it placed the notes in default after the Dewsnups paid the principal and interest, thereby entitling the lenders to foreclose on the trust deed and to reject the Dewsnups' demand for reconveyance. The district court also denied Mrs. Dewsnup's counterclaim for wrongful foreclosure on the trust deed property. Mrs. Dewsnup again appealed to this court.

¶ 14 On the third appeal, we held that while there was no genuine dispute that Mrs. Dewsnup had failed to pay attorney fees attendant to collecting the promissory notes, the district court had "made no finding as to the amount of the fees [Mrs.] Dewsnup still owed" at the time of the foreclosure sale on April 29, 1994. "Only the amount, if any, owing for attorney fees incurred in the collection of the notes ... would constitute a legal basis for holding a foreclosure sale on the trust deed property." *Timm v. Dewsnup*, 1999 UT 105, ¶ 12, 990 P.2d 942 (*Timm III*).

¶ 15 We therefore remanded the case yet again, instructing the district court "to determine what amount, if any, of attorney fees remained unpaid on the promissory notes when the sale was held.... For all amounts in excess of that amount, the sale was defective." *Id.* at ¶ 15. We also held that the district court had erred in dismissing Mrs. Dewsnup's counterclaim for wrongful foreclosure.

¶ 16 On remand for the third time, the district court determined that on December 5, 1980, $5,000 in costs and attorney fees were due and owing for collection efforts on the promissory notes, and that this amount was secured by the trust deed. The district court also found that from December 5, 1980, to April 29, 1994, the plaintiffs had incurred $83,911.67 in costs and attorney fees in an attempt to collect amounts due on the promissory notes, for a total of $88,911.67 due the lenders. The trial court expressly approved the lenders' application of the difference between the amount bid for the trust deed property, $115,000, and costs and attorney fees incurred in collecting the secured debt, $88,911.67, to the $49,966.21 judgment lien on the Arrow contract.

¶ 17 In response to these findings, both parties filed cross motions for summary judgment. Mrs. Dewsnup's motion was grounded in the same claims that had been rejected by the trial court and reinstated by us in *Timm III,* namely, that the foreclosure sale (1) was barred by the statute of limitations, (2) foreclosed on an unsecured debt, (3) violated the one-action rule, and (4) failed to comply with the statutory requirements for a foreclosure sale. The district court granted summary judgment in favor of the lenders. Mrs. Dewsnup now appeals again.

## ANALYSIS

### I. STATUTE OF LIMITATIONS

¶ 18 Mrs. Dewsnup asserts the non-judicial foreclosure sale on the trust deed property that secured the promissory notes was barred by the statute of limitations. "An action may be brought within six years ... upon any contract, obligation, or liability founded upon an instrument in writing...." Utah Code Ann. § 78–12–23(2) (2002). The promissory notes went into default on June 1, 1980. The six-year period for filing suit thus would have ended on June 1, 1986. However, the Dewsnups' bankruptcy petitions triggered a stay of the statute of limitations.

¶ 19 The United States Bankruptcy Code states in part as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under [the Bankruptcy Code] *operates as a stay,* applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code]

11 U.S.C.A. § 362(a)(1) (1993) (emphasis added). The Utah Code further provides that

[w]hen the commencement of an action is stayed by injunction or a statutory prohibition the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action.

Utah Code Ann. § 78–12–41 (2002). Holding that these two statutory provisions work in tandem, this court has previously concluded that Utah Code Ann. § 78–12–41 "is wholly consistent with [the stay] provisions of the Bankruptcy Code ... [by which] creditors are precluded from instituting any action detrimental to the bankruptcy estate prior to the termination or expiration of the stay." *Citicorp Mortgage, Inc. v. Hardy,* 834 P.2d 554, 556 (Utah 1992). Here, the operation of these complementary statutes means that while the Dewsnups were in bankruptcy proceedings the lenders were barred from foreclosing on the trust deed property, and the statute of limitations on their foreclosure action was stayed.

¶ 20 The Dewsnups filed the first of a series of bankruptcy petitions in April 1981, some ten months after defaulting on the notes. These petitions remained pending until January 1992 when the United States Supreme Court ruled on the Dewsnup's bankruptcy court appeal. Until then, the lenders could not foreclose because the statute of limitations was stayed. As the Supreme Court noted in its decision: "Because of the pendency of these bankruptcy proceedings, respondents [the lenders] were not able to proceed to the foreclosure sale." *Dewsnup v. Timm,* 502 U.S. 410, 413, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

[1] ¶ 21 The lenders foreclosed on the trust deed property on April 29, 1994, approximately two years and three months after the conclusion of Mrs. Dewsnup's bankruptcy proceedings. When this elapsed time is added to the ten months between the date of default and the Dewsnups' bankruptcy filing, the sum is approximately three years and one month, well within the six-year limitation.

¶ 22 Mrs. Dewsnup fails to cite any authority to support an alternative computation of the limitations period. Accordingly, we affirm the conclusion of the district court that the non-judicial foreclosure sale on the trust deed property securing the promissory notes was not barred by the statute of limitations.

## II. FORECLOSURE ON AN UNSECURED DEBT

¶ 23 Mrs. Dewsnup next claims that as the lenders foreclosed on the trust deed property for $222,814.62 of debt, some of which was later found to be not secured by the trust deed property, the foreclosure sale was defective and that she is entitled to damages. However, at the time of the foreclosure, the lenders had a valid judgment for the full amount. When this court determined in *Timm II* that the $49,966.21 Arrow contract debt was not secured by the trust deed, we did not alter the status of that judgment lien. It remained intact. Rather, we remanded with instruction to the district court to determine "what amount, if any, remained outstanding on the promissory notes" secured by the trust deed. *Timm II*, 921 P.2d at 1394. When we remanded for yet a third time with the same instruction in *Timm III*, we noted that the foreclosure sale was defective only "[f]or all amounts in excess" of what remained owing on the promissory notes. *Timm III*, 1999 UT 105 at ¶ 15, 990 P.2d 942. Accordingly, the issue really before us is the amount foreclosed upon by the sale of the trust deed property, not whether the sale itself was defective.

[2] ¶ 24 Mrs. Dewsnup concedes in her brief to this court that some amount is due on attorney fees to collect the trust deed debt. At trial, the district court found that amount to be $88,911.67. This determination resulted from factual findings based upon testimony presented to the court. Utah Rule of Civil Procedure 52(a) provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...." To prevail against these findings on appeal, Mrs. Dewsnup faces a substantial burden. As the Utah Court of Appeals has correctly stated, "The challenging party must marshal *all* relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct.App.1991) (citations omitted). Here, Mrs. Dewsnup fails to cite any evidence or testimony that supports the district court's findings and, as a result, cannot demonstrate why these findings are clearly in error. Accordingly, we accept the district court's finding of $88,911.67 owing to the lenders at the time of the foreclosure sale.

¶ 25 Mrs. Dewsnup further asserts that she is entitled to the difference between the amount the lenders bid for the trust deed property, $115,000, and costs and attorney fees they incurred in collecting the secured debt, $88,911.67. We disagree. Section 57-1-29 of the Utah Code provides that once all the debt and attendant fees and costs are paid after a trustee's sale, any balance that may remain is to be paid "to the person or persons legally entitled to the proceeds." Utah Code Ann. § 57-1-29 (2000). This court has interpreted the meaning of legal entitlement, noting that

> [a]lthough § 57-1-29 does not specifically mention junior trust deeds or lienholders, the surplus from the sale stands in the place of the foreclosed real estate and is subject to the same liens and interests that were attached to it....
>
> ....
>
> ... [J]unior interests are protected by the requirement that the trustee distribute any surplus proceeds to the person legally entitled thereto.

*Randall v. Valley Title*, 681 P.2d 219, 221 (Utah 1984). In other words, any excess left over from the non-judicial foreclosure sale on

the trust deed property belongs not to Mrs. Dewsnup, but to other valid lienholders.

■ ¶ 26 Therefore, upon the sale of the trust deed property to satisfy claims on the trust deed, the lenders as junior lienholders were legally entitled to any excess sufficient to satisfy the $49,966.21 judgment on the Arrow contract. In addition, as the excess amount is insufficient to totally retire the Arrow contract judgment, Mrs. Dewsnup has suffered no damages resulting from the foreclosure sale on the trust deed property.

¶ 27 We accordingly affirm the finding of the district court that the foreclosure sale was not defective and that Mrs. Dewsnup is not entitled to any attendant damages.

### III. THE ONE–ACTION RULE

¶ 28 Mrs. Dewsnup's third issue on appeal is that the non-judicial foreclosure sale on the trust deed property violated Utah's one-action rule. Her one-action rule claim is tethered to the fundamental premise that to comply with the rule, a creditor who has secured a debt with several mortgages, which includes among them a deed of trust, has forfeited his statutory right to foreclose the trust deed non-judicially in the event of default, and must instead include the trust deed in one judicial foreclosure on all of the mortgages. According to Mrs. Dewsnup, to permit a creditor to respond to the default of a debt by initiating a judicial foreclosure action on one mortgage while exercising the trustee's power of sale on a deed of trust securing the same debt would be to sanction multiple actions on the same debt in violation of the rule. We disagree.

¶ 29 The one-action rule is found in section 78–37–1 of the Utah Code and provides in pertinent part:

There can be but one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of this chapter.

Utah Code Ann. § 78–37–1 (2002). We have extended the reach of the one-action rule to trust deeds. *Utah Mortgage & Loan Co. v. Black,* 618 P.2d 43, 45 (Utah 1980). We have not previously addressed, however, the question of whether the non-judicial foreclosure of a deed of trust constitutes an "action" under the one-action rule. Because we conclude that it does not, the sale of the Dewsnups' property does not violate the one-action rule.

¶ 30 Rule 2 of the Utah Rules of Civil Procedure states: "There shall be one form of action to be known as 'civil action.'" The lenders' exercise of the power of sale under the deed of trust was not a civil action. This distinction is reflected in nomenclature distinguishing "judicial" from "non-judicial" foreclosure proceedings.[3] In addition, section 57–1–32 of the Utah Trust Deed Act specifically authorizes the commencement of an "action" when the amount of the debt exceeds the fair market value of the property subject to the deed of trust, which did not happen here. Utah Code Ann. § 57–1–32 (Supp.2003).

¶ 31 Our holding here that the sale of the Dewsnups' property was not an "action" is also in harmony with the language and intent of the one-action rule. We have previously interpreted the rule to mean that

there is no personal liability on the part of the mortgagor [debtor] until after foreclosure or sale of the security and then only for the deficiency then remaining unpaid; a mortgagee [creditor] may not have a personal judgment against the mortgagor until the security has first been exhausted.

*Lockhart v. Equitable Realty Inc.,* 657 P.2d 1333, 1334 (Utah 1983) (citing *First Nat'l Bank of Coalville v. Boley,* 90 Utah 341, 61 P.2d 621, 623 (1936)).

¶ 32 In addition, we have stated that the function of the one-action rule is to

**3.** The California Supreme Court has also stated that "an extrajudicial [non-judicial] setoff [action] is not an action" in the ambit of the one-action rule. *Security Pac. Nat'l Bank v. Wozab,* 51 Cal.3d 991, 275 Cal.Rptr. 201, 800 P.2d 557, 562 (1990); *see also id.* at n. 7. (We disapprove of *Bank of America v. Daily* [152 Cal.App.3d 767, 199 Cal.Rptr. 557 (1984)] to the extent it construed a setoff as itself being an action.) We have previously recognized that "the California version of the one-action rule ... is virtually identical to Utah's one-action rule." *City Consumer Servs., Inc. v. Peters,* 815 P.2d 234, 236 (Utah 1991).

eliminate harassment of debtors and multiple litigation which sometimes occurred under the common-law rule which allowed a creditor to foreclose and sell the land and sue on the note. The statute limits the creditor to one remedy in exhausting his security before having recourse to the debtor for a deficiency.

*Id.* at 1335 (citing *Utah Mortgage & Loan,* 618 P.2d at 45).

■ ¶ 33 The fundamental lesson to be drawn from our cases interpreting the one-action rule is that its primary objective is to place the personal assets of a mortgagor beyond the reach of a mortgagee until the value of the pledged property is exhausted. The non-judicial sale of the trust deed property never placed the Dewsnups' personal assets at risk and violated neither the letter nor the spirit of the one-action rule.

## IV. DEFECTIVE NOTICE OF FORECLOSURE SALE

¶ 34 Mrs. Dewsnup also argues that the foreclosure sale on the trust deed property was defective for lack of proper notice. The manner in which Mrs. Dewsnup seeks to apply the notice requirements, however, is not contemplated under our statutory or case law.

¶ 35 The Utah Code provides in relevant part for notice of a trustee's sale as follows:

(2)(a) Not later that ten days after recordation of a notice of default, the trustee or beneficiary shall mail a signed copy of the notice of default:

(i) by certified or registered mail, with postage prepaid;

(ii) with the recording date shown;

(iii) addressed to each person whose name and address are set forth in a request that has been recorded prior to the filing for record of the notice of default; and

(iv) directed to the address designated in the request.

(b) At least 20 days before the date of sale, the trustee shall mail a signed copy of the notice of the time and place of sale:

(i) by certified or registered mail, return receipt requested, with postage prepaid;

(ii) addressed to each person whose name and address are set forth in a request that has been recorded prior to the filing for record of the notice of default; and

(iii) directed to the address designated in the request.

(3)(a) Any trust deed may contain a request that a copy of any notice of default and a copy of any notice of sale under the trust deed be mailed to any person who is a party to the trust deed at the address of the person set forth in the trust deed.

Utah Code Ann. § 57–1–26(2), (3)(a) (Supp. 2002).[4]

¶ 36 The statute expressly requires that notice be sent by certified or registered mail only when an address for such notice is properly recorded or is included in the trust deed. The Dewsnups' trust deed included only a general delivery address, which therefore precluded notice by certified or registered mail. Nonetheless, there was evidence presented at trial that Mrs. Dewsnup had actual notice of the pending foreclosure sale. Mrs. Dewsnup filed a motion to stay the sale one month in advance of the foreclosure. She was also in attendance at the sale. In applying the notice requirements, we have previously stated:

The purpose of strict notice requirements in a nonjudicial sale of property secured by trust deed is to inform persons with an interest in the property of the pending sale of the property, so that they may act to protect those interests. The objective of the notice is to prevent a sacrifice of the property. If that objective is attained, immaterial errors and mistakes will not affect the sufficiency of the notice or the sale made pursuant thereto. A party who seeks to have a trustee sale set aside for irregularity, want of notice, or fraud has the burden of proving his contention, it

---

4. The referenced sections of the Utah Code have undergone stylistic changes since the foreclosure sale in 1994 but remain substantively similar.

being presumed, in the absence of evidence to the contrary, that the sale was regular. Defects in the notice of foreclosure sale that will authorize the setting aside of the sale must be those that would have the effect of chilling the bidding and causing an inadequacy of price. The remedy of setting aside the sale will be applied only in cases which reach unjust extremes.

*Concepts, Inc. v. First Sec. Realty Serv., Inc.,* 743 P.2d 1158, 1159 (Utah 1987) (citations omitted).

■ ¶ 37 Whatever irregularities Mrs. Dewsnup may allege in the technicalities of the notice requirement, they are immaterial if she does not demonstrate that she was unable to protect her interests, or if there were a resulting "effect of chilling the bidding and causing an inadequacy of price." She has failed to satisfy that burden. Accordingly, we affirm the determination of the district court that the notice of the foreclosure was not defective.

### V. ISSUES RAISED FOR THE FIRST TIME ON APPEAL

¶ 38 Mrs. Dewsnup also raises two issues for the first time in her brief to this court on appeal. The first concerns claims of genuine issues of material fact preventing an award of summary judgment by the district court. The other concerns a failure to credit a payment of $3,362.37 to the lenders.

¶ 39 We have previously stated that "we will review issues raised for the first time on appeal only if exceptional circumstances or 'plain error' exists." *Salt Lake City v. Ohms,* 881 P.2d 844, 847 (Utah 1994). Mrs. Dewsnup fails to bring to our attention any exceptional circumstances that would compel us to examine these issues. Accordingly, we decline to address them here.

### CONCLUSION

¶ 40 For the reasons set forth above, we affirm the determinations of the district court. The lenders' foreclosure sale on the trust deed property (1) was not barred by the statute of limitations; (2) did not foreclose on an unsecured debt; (3) did not violate the one-action rule; and (4) complied with the statutory requirements for a foreclosure sale.

¶ 41 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.

¶ 42 Justice RUSSON did not participate herein; then District Judge RONALD E. NEHRING sat.